Argued and submitted March 9, the decision of the Court of Appeals and order of the Workers' Compensation Board reversed and remanded to the board for further proceedings May 31, 1989

In the Matter of the Compensation of
Grace L. Stephen, Claimant.

SAIF CORPORATION et al,
*Petitioners on Review,*

*v.*

STEPHEN,
*Respondent on Review.*

(WCB 85-14678; CA A46435; SC S35680)

774 P2d 1103

Christine Chute, Assistant Attorney General, Salem, argued the cause for petitioners on review. With her on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James L. Edmunson, of Malagon & Associates, Eugene, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Linde, Carson, Jones, Gillette and Fadeley, Justices.

JONES, J.

## JONES, J.

■       The issue in this workers' compensation case is whether a claimant who voluntarily leaves the work force and thereafter becomes totally disabled by a compensable injury is entitled to permanent total disability (PTD) benefits. We hold that, before a claimant is entitled to PTD benefits, the claimant must establish that, but for the compensable injury, she is or would be willing to seek regular gainful employment *and* has or would have made reasonable efforts to do so. We remand this case to the Workers' Compensation Board (Board) to make findings concerning whether, but for the compensable injury, the claimant would have returned to work.

We take the following facts from the Board's Order on Review:

"Claimant worked as a welder for SAIF's insured from 1942 until 1945. During that period, she had significant exposure to asbestos. Since leaving work in 1945, claimant has neither sought nor obtained work other than raising her large family. Ultimately, claimant developed squamous cell carcinoma that resulted in a 1962 left vocal cord excision and a 1971 total laryngectomy."

We add the following from the parties' agreed statement of facts:

"[REFEREE]:    I understand that you have arranged for a formula to put words in claimant's mouth, both of you [because it is very difficult for claimant to talk].

"[SAIF'S COUNSEL]:    Yes. Counsel will indicate what she believes the claimant would testify if called, and I will presumably indicate my agreement or disagreement. And then I will indicate what I think she would say on cross examination and she will do the same.

"* * * * *

"[CLAIMANT'S COUNSEL]:    Well, she'd testify that she is 73 years old. She has a fourth grade education. The only training that she had beyond just that schooling was the welding training that she had when she worked in the shipyards in the 1940's. She worked there until 1945 and hasn't worked since that time.

"She never had definite plans to go back to work but she never had definite plans not to go back to work. She thinks

that if she hadn't had the cancer that she could possibly have gone back to work as a welder. But she feels that she wasn't skilled and didn't have the education to go into any other kind of work.

"She has had a heart condition for about the last five-and-a-half years. I can't really specify beyond that what the nature of that is or how severe it is or anything.

"* * * * *

"[REFEREE]:  I suppose I would want to add one question. After the 1962 surgery after she healed up, did she consider herself able to return to welding work at that juncture?

"[CLAIMANT'S COUNSEL]:  No. In fact that's the one thing I forgot to say. She doesn't consider herself able to do any kind of work after that 1962 surgery because of—just her weakness and her shortness of breath, combined with her lack of education and lack of skills and that sort of thing. She doesn't think she can go back and do the welding after 1962.

"* * * * *

"[SAIF'S COUNSEL]:  I'll agree that she would so testify. In addition to that, she would testify to the following, that she is really not sure when her medical condition stabilized after any of her surgeries, that she hasn't looked for any work since 1945 and hasn't worked any place since 1945, that she has nine children which she raised, that she had no definite plans to return to work after her children grew up.

"On reflection now, she thinks she possibly would have looked for welding work at some indefinite time if she hadn't developed cancer, because welding was the only job she knew and she felt that she was not skilled or educated to do any other kind of work after leaving the shipyards.

"* * * * *

"She has been using the wheelchair for the last couple of months.

"* * * * *

"[CLAIMANT'S HUSBAND]:  After she had her heart attack, she spent four months in bed, never got up for four months.

"[CLAIMANT'S COUNSEL]:  Did she use a wheelchair before that?

"[CLAIMANT]:  No.

"[SAIF'S COUNSEL]: She had a heart attack—let's add to this that she had a heart attack 12 to 14 months ago."

The Board's order further stated:

"In August 1982 claimant filed a claim for her cancer based on asbestos exposure. A May 1984 Referee's order found claimant's condition compensable. The Referee's order was affirmed by the Board in December 1984. *Grace Stephen,* 36 Van Natta 1881 (1984). In August 1985 a Determination Order issued awarding claimant 100 percent unscheduled permanent disability, but no temporary total disability. At hearing claimant sought permanent total disability and temporary disability compensation."

The referee concluded that claimant was totally disabled for the three months following both surgeries, and therefore awarded claimant temporary total disability (TTD).

The Board reversed the award of TTD on the basis of *Cutright v. Weyerhaeuser Co.,* 299 Or 290, 702 P2d 403 (1985), finding that claimant voluntarily left the labor market and thereafter "neither sought nor obtained work outside of her home again." The Board, however, affirmed the referee's award of PTD. SAIF Corporation (SAIF) appealed and the Court of Appeals affirmed per curiam. *SAIF Corp. v. Stephen,* 93 Or App 217, 761 P2d 931 (1988). We allowed review to determine whether, as a matter of law, a claimant who voluntarily withdrew from the labor force and subsequently became totally disabled by a compensable occupational disease is entitled to PTD, and if so, under what circumstances.

In *Cutright v. Weyerhaeuser Co., supra,* this court held that claimants who were voluntarily out of the labor force when their prior compensable conditions worsened and surgery became necessary were not entitled to additional compensation for TTD. *Cutright* noted that "[t]he thrust of the [workers' compensation] act is to restore injured workers to employment status." 299 Or at 297.

In this case, claimant essentially argues that PTD, unlike TTD, is based on lost earning capacity, rather than wage replacement. Claimant is wrong. That battle was fought in *Cutright*—PTD is based on wage replacement. The majority's reasoning in *Cutright* supports this conclusion; only the dissent supports claimant's position.

*Cutright* explains that the Workers' Compensation Law is grounded on wage replacement and medical treatment:

> "The entire scheme of Workers' Compensation Law is to compensate workers, who are active in the labor market, for *wages lost* because of inability (or reduced capacity) to work as a result of a compensable injury and to pay for medical expenses incurred in treatment of injury. * * *
>
> "* * * * *
>
> "That the legislature intended workers' compensation benefits to provide *wage replacement* is made clearer by the statutes providing for compensation for injured workers or their beneficiaries. * * *
>
> "Under ORS 656.206(2), the formula for calculating *permanent total disability* benefits is based on *wage replacement:*
>
> " '(2)(a) When permanent total disability results from the injury, the worker shall receive during the period of that disability compensation benefits equal to 66-2/3 percent of wages not to exceed 100 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50, whichever amount is lesser.
>
> " '(b) In addition, the worker shall receive $5 per week for each additional beneficiary not to exceed five. * * *' " 299 Or at 296-98 (emphasis in original deleted; emphasis added).

Moreover, *Cutright* indicates that lost earning capacity is not independently compensable:

> "Earning capacity only goes to the extent of disability. Loss of earning capacity can only be determined in the context of the claimant's ability to work; *it is not, by itself, an independent kind of injury for which compensation is provided.*" *Id.* at 301 (emphasis added).

■  SAIF maintains that the award of PTD benefits should be reversed because claimant voluntarily removed herself from the labor market more than 40 years before she became totally disabled. The Workers' Compensation Law applies to "workers." *See* ORS 656.027. In part, ORS 656.005(27) defines a "worker" as

> "any person, including a minor whether lawfully or unlawfully employed, *who engages to furnish services for a remuneration,* subject to the discretion and control of an employer * * *." (Emphasis added).

A person who voluntarily withdraws from the work force is not entitled to PTD benefits for a subsequent disability because she or he is no longer a worker, that is, no longer one who "engages to furnish services for a remuneration." Such a person does not suffer lost wages as a result of a subsequent disability. As stated in *Cutright:*

> "There is not one word in [ORS 656.005(27)] that refers to a person who no longer engages in furnishing services for remuneration. Certainly, one who retires voluntarily from the work force is no longer a 'worker' as defined." *Id.* at 297 (emphasis in original).

Removal from the work force, however, is not necessarily a static state. A claimant may voluntarily leave the work force with a sincere hope of never having to return, but later decide that returning to the work force is desirable or necessary because of changed financial or personal circumstances. If such a claimant is unable to return to the work force because of a prior compensable injury, he or she would suffer lost wages at that point. Such a claimant is not barred from receiving PTD benefits solely because he or she earlier voluntarily left the work force.

■ A claimant who seeks to re-enter the work force after voluntary withdrawal, but is prevented from doing so by a compensable injury, may qualify as a worker although not presently engaged "to furnish services for a remuneration." ORS 656.003 provides that the statutory definitions apply "[e]xcept where the context otherwise requires." Because such a claimant suffers lost wages as a result of a compensable injury, the term "worker" as used in ORS 656.206 includes such a claimant. The inquiry concerning whether such a claimant is entitled to PTD benefits, however, does not end here.

ORS 656.206(3) provides:

> "The worker has the burden of proving permanent total disability status and must establish that the worker is *willing to seek regular gainful employment* and that the worker *has made reasonable efforts to obtain such employment.*" (Emphasis added.)

Thus, before a claimant is entitled to PTD he or she must establish that, but for the compensable injury, he or she (1) is or would be willing to seek regular gainful employment and (2)

has or would have made reasonable efforts to obtain such employment. A claimant who is so incapacitated that he or she cannot perform regular gainful employment need not establish that he or she "has made reasonable efforts to obtain such employment" because seeking such work would be futile. ORS 656.206(3) was not intended to require claimants to engage in such a useless act. *See Cutright v. Weyerhaeuser Co., supra,* 299 Or at 307 (Lent, J., dissenting). Such a claimant, however, must establish that he or she, but for the compensable injury, is or would be willing to seek regular gainful employment.

In the instant case the Board found:

> "[D]espite being a retired worker, the evidence supports the conclusion that any attempt by claimant to locate work would have been futile. As a result, we find that claimant has satisfied the seek work requirement of ORS 656.206(3)." (Citation omitted.)

■ We agree that the findings justify the conclusion that any attempt by claimant to obtain regular gainful employment would have been futile. But that does not end the inquiry. Neither the Board nor the referee[1] made findings concerning whether, but for *the compensable injury,* the claimant would have returned to work. This determination is essential concerning claimant's eligibility for PTD. It is not sufficient, for example, to show only that she is prevented from returning by other, nonjob-related disabilities. Accordingly, we remand the case to the Board for further proceedings consistent with this opinion.

---

[1] In his September 12, 1989, Opinion and Order, the referee stated in part:

"At the hearing, the limited testimony of claimant and the testimony of the claimant's witnesses indicated that claimant was indeed permanently totally disabled. Dr. Morton indicated that after the 1971 surgery [claimant] became 100% disabled and this was related to the work-related cancer and not to the subsequent development of heart diseases. The Referee's observation of claimant during the course of the hearing also indicated that claimant was permanently totally disabled.

"I am of the opinion that claimant's status of permanent total disability was proved on the date of the hearing, July 9, 1986. The documentation indicates that claimant had a subsequent development of heart disease and what effect this had on claimant's present inability to work was not established until the date of the hearing. Conceivably, SAIF could have presented evidence that but for the heart disease the residuals from the work-related carcinoma would not have prevented her from employment."