Argued and submitted January 31, the decisions of the Workers' Compensation Board and the Court of Appeals reversed and case remanded to the Board August 29, 1989

In the Matter of the Compensation of
Roland L. Dawkins, Claimant.

DAWKINS,

*Petitioner on Review,*

*v.*

PACIFIC MOTOR TRUCKING,

*Respondent on Review.*

(WCB No. 85-11265; CA A43907; SC S35407)

778 P2d 497

Randy M. Elmer, Salem, filed the petition and argued the cause for petitioner on review. With him on the petition was Vick & Gutzler, Salem.

Thomas W. Sondag, Portland, filed the responses and argued the cause for respondent on review. With him on the responses was Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland.

CARSON, J.

## CARSON, J.

In this workers' compensation case, the issue is whether claimant is entitled to temporary total disability from the time of his aggravation claim until the determination that he was permanently and totally disabled. Relying in part upon *Cutright v. Weyerhaeuser Co.,* 299 Or 290, 702 P2d 403 (1985), the hearings referee concluded that claimant is not entitled to temporary total disability. The Workers' Compensation Board affirmed, as did the Court of Appeals. *Dawkins v. Pacific Motor Trucking,* 91 Or App 562, 756 P2d 60, *reconsideration granted and former opinion adhered to,* 93 Or App 349, 762 P2d 329 (1988). We reverse the decisions below and remand the case to the Board.

Claimant is a 63-year-old former truck driver. Employer is a trucking company. In August 1982, claimant was involved in a work-related highway collision, that resulted in serious injury, including an injury to his head. He underwent surgery to relieve a subdural hematoma. Claimant recovered from dizzy spells and headache, but continued to suffer from movement disorder, stamina loss, and cognitive dysfunction.

In February 1984, a determination order awarded claimant permanent partial disability of 176 degrees for 55 percent unscheduled disability resulting from the head injury (amounting to $17,600). Claimant and employer later agreed to an additional permanent partial disability award of 96 degrees for 30 percent unscheduled disability (amounting to an additional $9,600). The result was 85 percent total unscheduled permanent partial disability.

In July 1985, claimant's physician determined that his condition had deteriorated. The movement disorder had increased, while stamina and cognitive ability had decreased. Claimant filed an aggravation claim. Employer agreed to pay medical expenses but refused to pay temporary total disability because claimant had "retired."[1]

---

[1] In some instances, the yardstick for denying compensation in this type of case has been characterized as whether the claimant has "voluntarily retired." *See Cutright v. Weyerhaeuser Co.,* 299 Or 290, 293, 702 P2d 403 (1985); *State v. Commissioner,* 40 Ohio St 3d 44, 531 NE2d 678 (1988). We prefer to state the test as whether claimant has "withdrawn from the work force" rather than "retired." The latter word blurs rather than sharpens the inquiry.

Subsequently, the Evaluation Division found claimant medically stationary and awarded him permanent total disability in lieu of permanent partial disability. It denied temporary total disability for the period between the filing of the aggravation claim (July 1985) and the award of permanent total disability (March 1986).

In June 1986, a hearing was held to determine whether claimant was entitled to temporary total disability. Claimant was drawing Social Security disability and a union disability pension. On the advice of his physician, claimant had neither worked, nor sought work, since August 1982, the date of the work-related injury. Claimant had entered a vocational rehabilitation program in 1984, but was terminated from the program because of his physical and mental condition.

It is undisputed that claimant's aggravation claim is related to his original compensable injury. Our inquiry focuses on whether claimant had withdrawn from the work force at the time of the aggravation of his prior work-related injury. If claimant had then withdrawn from the work force, the decision in *Cutright v. Weyerhaeuser Co., supra,* demands that he be denied temporary total disability.

This court, in *Cutright,* defined temporary total disability as "maintenance benefits intended to provide support and help replace lost income during the healing or recovery process." 299 Or at 302. In *Cutright,* each claimant sustained injury, was awarded permanent partial disability, and "voluntarily left" the work force. Each claimant's condition worsened and required surgery, and each applied for compensation for medical services and for temporary total disability. The employers paid medical expenses but refused to pay temporary total disability because claimants were no longer in the work force. 299 Or at 293. Relying on the claimants' voluntary withdrawal from the work force at the time of the aggravation of their prior work-related injuries, this court upheld the employers' refusal to pay temporary total disability. *Id.*

*Cutright* did not speak to a claimant who, although unable to work because of a prior compensable injury, yet may remain in the work force. In this case, the referee, the Board, and the Court of Appeals read *Cutright* to preclude temporary total disability for such a claimant. That was too broad a

reading of *Cutright*. The prior compensable injury may prevent the claimant from securing employment and, in extraordinary circumstances, may render futile any attempt to seek employment.

■     To receive temporary total disability upon aggravation of a work-related injury, the claimant must be in the work force at the time of the aggravation. *Cutright v. Weyerhaeuser Co., supra*. A claimant is deemed to be in the work force if:

   a.   The claimant is engaged in regular gainful employment; or

   b.   The claimant, although not employed at the time, is willing to work and is making reasonable efforts to obtain employment, *Cutright v. Weyerhaeuser Co., supra; see* ORS 656.206(3); or

   c.   The claimant is willing to work, although not employed at the time and not making reasonable efforts to obtain employment because of a work-related injury, where such efforts would be futile. *Cf. SAIF v. Stephen,* 308 Or 41, 47-48, 774 P2d 1103 (1989).

A claimant who is not employed, is not willing to be employed, or, although willing to be employed, is not making reasonable efforts to find employment (unless such efforts would be futile because of the work-related injury) has withdrawn from the work force. A claimant who, at the time of the aggravation of the work-related injury, has withdrawn from the work force is not entitled to temporary total disability.

■     Here, claimant's 85 percent permanent partial disability and worsened condition may excuse a failure to try to find employment and may avoid a finding that he had withdrawn from the work force if claimant otherwise was willing to work. We remand to the Board to find whether claimant had withdrawn from the work force at the time of the aggravation of his prior work-related injury.

The decisions of the Workers' Compensation Board and the Court of Appeals are reversed. The case is remanded to the Board for proceedings consistent with this opinion.