Argued and submitted October 20, 1989, resubmitted In Banc January 10, reversed in part and remanded for reconsideration of penalty, excluding consideration of employer's failure to pay benefits; otherwise affirmed February 14, reconsideration denied April 25, petition for review denied May 22, 1990 (310 Or 71)

In the Matter of the Compensation of
Charles M. Kepford, Claimant.

## WEYERHAEUSER COMPANY,
*Petitioner,*

*v.*

## KEPFORD,
*Respondent.*

(87-02846; CA A60272)

786 P2d 745

Paul L. Roess, Portland, argued the cause for petitioner. With him on the brief was Acker, Underwood, Norwood & Hiefield, Portland.

James L. Edmunson, Eugene, argued the cause for respondent. On the brief were Christopher D. Moore and Malagon, Moore & Johnson, Eugene.

BUTTLER, J.

Joseph, Chief Judge, concurring in part; dissenting in part.

Rossman, J., dissenting.

## BUTTLER, J.

Employer seeks review of a Workers' Compensation Board order requiring it to pay claimant temporary total disability benefits from February 20, 1981, the date of the onset of his disability.

Claimant, age 63 at the time of the hearing, has not worked since February 20, 1981, when he left his job because of back pain. He underwent surgery in October, 1981, and sought compensation for an aggravation of a 1974 compensable injury. Employer denied the claim, whereupon claimant filed a new claim based on an occupational disease theory. Employer also denied that claim. A referee and the Board upheld the denials. Claimant sought review in this court only on the occupational disease claim.

Meanwhile, in November, 1982, claimant began receiving Social Security disability benefits retroactive to August, 1981. In May, 1983, at the suggestion of employer, claimant applied for and received employer provided disability retirement benefits retroactively to 1981. In January, 1986, we held that the occupational disease claim was compensable and remanded the claim to the Board for a determination of the extent of disability. *Kepford v. Weyerhaeuser Co.*, 77 Or App 363, 713 P2d 625, *rev den* 300 Or 722 (1986).

After our decision, employer submitted for closure the aggravation claim, rather than the occupational disease claim on which we had based our decision. It has not paid any benefits for time loss to this date, reasoning that claimant has been retired and, therefore, is not entitled to them. Claimant sought a hearing. At the time of the hearing in this proceeding, claimant had not been declared medically stationary and had not been released for work. He had, however, apparently withdrawn from the work force by May, 1983, at the latest, when he applied to employer for retirement benefits.

The Board, in affirming the referee, ordered employer to process the claim as an occupational disease claim and to pay claimant time loss from the date of the onset of disability until the claim is closed. It also assessed a penalty for employer's refusal to pay benefits for temporary total disability. The question is whether claimant is entitled to benefits for temporary total disability for the time after he began

receiving Social Security disability and retirement benefits from employer.

In *Cutright v. Weyerhaeuser Co.,* 299 Or 290, 702 P2d 403 (1985), the worker had voluntarily withdrawn from the work force for reasons unrelated to his compensable injury *after* the claim had been closed and before he filed an aggravation claim. The court stated that one who retires voluntarily from the work force is no longer to be compensated for time loss under the Workers' Compensation Law. It went on to say that payment of temporary total disability compensation is intended to provide wage replacement and that one who has voluntarily retired from the labor market cannot lose wages and is not, therefore, entitled to benefits for temporary total disability.

After *Cutright,* we decided several cases involving entitlement to benefits after retirement and, relying on *Cutright,* held that a person who has retired is not entitled to temporary total disability benefits. *Dawkins v. Pacific Motor Trucking,* 91 Or App 562, 756 P2d 60 (1988), *reconsideration granted and former opinion adhered to* 93 Or App 349, 762 P2d 329, *rev'd* 308 Or 254, 778 P2d 497 (1989); *Sykes v. Weyerhaeuser Company,* 90 Or App 41, 750 P2d 1171 (1988); *Karr v. SAIF,* 79 Or App 250, 719 P2d 35, *rev den* 301 Or 765 (1986). However, in each of those cases, like *Cutright,* the facts showed that the worker had retired *after* the initial closure of his claim and *before* the filing of an aggravation claim, but we did not rely on those facts, because *Cutright* did not appear to focus on them. None presented the question of the effect of a worker's retirement during the processing, and before closure, of a claim, *i.e.,* during the time when the employer would otherwise be obligated to pay benefits for temporary total disability.

It was not until the Supreme Court, on review of *Dawkins v. Pacific Motor Trucking, supra,* that the court focused on the significance of the time of a claimant's withdrawal from the work force on the claimant's entitlement to temporary total disability benefits arising out of an aggravation.[1] The court reiterated its holding in *Cutright v.*

---

[1] The court stated:

"Our inquiry focuses on whether claimant had withdrawn from the work force *at the time of the aggravation* of his prior work-related injury." (Emphasis supplied.) 308 Or at 257.

*Weyerhaeuser Co., supra,* and then considered the principal question presented: What constitutes a withdrawal from the work force that will preclude a claimant's entitlement to temporary total disability benefits for an aggravation? It concluded:

> "To receive temporary total disability upon aggravation of a work-related injury, the claimant must be in the work force *at the time* of the aggravation. *Cutright v. Weyerhaeuser Co., supra.* A claimant is deemed to be in the work force if:
>
> "a.   The claimant is engaged in regular gainful employment; or
>
> "b.   The claimant, although not employed at the time, is willing to work and is making reasonable efforts to obtain employment, *Cutright v. Weyerhaeuser Co., supra, see* ORS 656.206(3); or
>
> "c.   The claimant is willing to work, although not employed at the time and not making reasonable efforts to obtain employment because of a work-related injury, where such efforts would be futile. *Cf. SAIF v. Stephen,* 308 Or 41, 47-48, 774 P2d 1103 (1989)." 308 Or at 258. (Emphasis supplied.)

■ ■   *Dawkins* makes it clear that the critical time for determining whether a claimant has withdrawn from the work force is at the time of his disability.[2] It also makes it clear that, even though a claimant has applied for and received disability benefits from Social Security and disability retirement benefits from his union *before* his disability, he may be entitled to temporary total disability benefits if he can show that he fulfilled the requirements of criterion (c) at the time of his disability.[3]

■   Here, claimant was working and was, therefore, a member of the work force when he became disabled by his occupational disease. It matters not that he retired or had withdrawn from the work force after that time. Under

---

[2] Although *Dawkins* involved an aggravation of a work-related injury, we perceive no reason why the court would view a post-injury or post-occupational disease withdrawal from the work force differently. The parties do not dispute the Board's finding that claimant left work on February 20, 1981, on account of his disability. We treat that date as the "date of injury."

[3] In *Dawkins,* the court remanded the case to the Board to determine whether the claimant had satisfied criterion (c), even though he was receiving Social Security and retirement benefits at the time of his aggravation.

*Dawkins,* he need not show that he remained in the work force. Because he was entitled to receive benefits for temporary total disability at that time, he was entitled to continue to receive them until he became medically stationary and was released for work, ORS 656.325(5),[4] *Fazzolari v. United Beer Distributors,* 91 Or App 592, 757 P2d 857, *rev den* 307 Or 236 (1988), at which time employer was entitled to close his claim. ORS 656.268. We agree with the Board that employer, having been ordered to accept the occupational disease claim, should have processed it as if it had been accepted from the outset and should have paid benefits accordingly, including benefits for temporary total disability, to the date of claim closure. *Vip's Restaurant v. Krause,* 89 Or App 214, 748 P2d 164, *on reconsideration* 91 Or App 472, 756 P2d 47, *rev den* 306 Or 414 (1988).

■ Employer also contends that the Board should not have assessed a penalty for its failure to pay benefits for temporary disability for the time after claimant had retired because, in the light of the advice that it had received from its legal counsel that benefits for temporary total disability are not payable to a retired worker, it did not act unreasonably. We agree that, in view of some confusion in the state of the law at that time, employer's conduct in that respect was not unreasonable. However, the Board assessed the penalty on other grounds as well, including employer's failure to characterize the claim as disabling and its failure to submit the occupational disease claim to the Evaluation Division for closure. We remand to the Board for reconsideration of the penalty in the light of our decision.

Reversed in part and remanded for reconsideration of penalty excluding consideration of employer's failure to pay benefits; otherwise affirmed.

---

[4] ORS 656.325(5) provides:

"Notwithstanding ORS 656.268, an insurer or self-insured employer shall cease making payments pursuant to ORS 656.210 and shall commence making payment of such amounts as are due pursuant to ORS 656.212 when an injured worker refuses wage earning employment prior to claim determination and the worker's attending physician, after being notified by the employer of the specific duties to be performed by the injured worker, agrees that the injured worker is capable of performing the employment offered."

**JOSEPH, C. J.,** concurring in part; dissenting in part.

I concur with the lead opinion that claimant is entitled to total temporary disability benefits.

I dissent from the lead opinion in respect to the penalty assessed against employer for failure to pay temporary disability benefits. The lead opinion says that it was not unreasonable for employer to rely on the advice of its counsel that it was not required to pay benefits because claimant had retired. In the face of ORS 652.268, employer had no right to rely on bad legal advice. Its conduct in that respect was, therefore, unreasonable. The Board properly assessed the penalty.

Graber, J., joins in this opinion.

**ROSSMAN, J.,** dissenting.

I dissent.

The way I see it, workers' compensation is for "workers."[1] Claimant is not a "worker." Therefore, claimant is not entitled to compensation.[2] End of case.[3]

---

[1] Perhaps the reason that I find this case so bothersome is that it epitomizes how worker's compensation, which was intended to be an understandable and straightforward system, has been transformed into a complicated, legalistic maze.

[2] The purpose of the Workers' Compensation Act is to provide wage replacement and medical benefits for *workers* who sustain compensable injuries. *Cutright v. Weyerhaeuser Co.,* 299 Or 290, 296, 702 P2d 403 (1985). Because "a person who has withdrawn from the work force has lost no wages," the person is not entitled to temporary total disability payments. *Karr v. SAIF,* 79 Or App 250, 253, 719 P2d 35, *rev den* 301 Or 765 (1986). In this case, it is undisputed that claimant had retired by May, 1983. It follows that, having ceased to be a worker, he became ineligible to receive temporary total disability benefits at that time.

[3] It is difficult to be too critical of the majority, because *Dawkins v. Pacific Motor Trucking,* 308 Or 254, 778 P2d 497 (1989), supports the conclusion that a claimant may be considered to be in the work force, notwithstanding retirement. Nevertheless, the opinion is disturbing in that it directs an employer to pay benefits to claimant for the same time period during which he received payment from Social Security and employer's retirement plan. In my view, *Dawkins* should be distinguished on the basis that it did not involve a claimant who had accepted retirement benefits from his employer. The fact that claimant in this case has done so proves that he is no longer willing to work and has permanently withdrawn from the workforce.

Accordingly, I dissent.[4]

-

_____

[4] I agree with the majority that, given the ongoing confusion in the state of the law regarding when a retired worker is entitled to benefits for temporary total disability, the employer did not act unreasonably when it failed to pay claimant for the time after he retired. Therefore, assuming that claimant was entitled to the benefits, the Board should not have assessed it a penalty. I would not reach that issue, however, because, in my view, the Board should not have required the employer to pay the benefits in the first place.