[No. 10056–1–III.   Division Three.   March 20, 1990.]

KAISER ALUMINUM & CHEMICAL CORPORATION, *Appellant,* v.
GENE R. OVERDORFF, ET AL, *Respondents.*

*Michael Cronin* and *Winston & Cashatt,* for appellant.

*James Solan* and *Solan, Doran, Milhelm & Hertel,* for
respondents.

MUNSON, C.J.—Kaiser Aluminum & Chemical Corpora-
tion, a self–insured employer, appeals the trial court's
judgment affirming the award of time loss compensation to
a former employee injured while in the course of employ-
ment. Kaiser contends (1) the former employee was not

entitled to time loss compensation benefits during the period in dispute; he was collecting retirement benefits at the time, and (2) the court erred in awarding the former employee attorney fees. We reverse.

On February 2, 1983, Gene Overdorff, then age 55, suffered a right inguinal hernia while shoveling coke at Kaiser's Mead plant. He filed a workers' compensation claim, which was accepted by the Department of Labor and Industries. Despite the injury, Mr. Overdorff continued to work until he voluntarily retired on February 28, 1983.[1]

Mr. Overdorff's hernia condition progressed to a point where surgical repair became necessary. On November 22, 1985, approximately 2 years 9 months after his industrial injury and retirement form Kaiser, he underwent the operation. On December 15, 1986, the Department issued an order authorizing payment for medical treatment and closing Mr. Overdorff's claim. He requested reconsideration of the closing order, asserting a right to time loss compensation. The Department adhered to its prior decision.

Mr. Overdorff appealed to the Board of Industrial Insurance Appeals (Board), and an administrative hearing was held. The parties stipulated Mr. Overdorff was unable to engage in work from the date of surgery, November 22, 1985, to the date he became medically stable, January 14, 1986. In a proposed decision and order, the Administrative Law Judge reversed the Department order and determined Mr. Overdorff was temporarily and totally disabled during this period, and therefore entitled to time loss compensation benefits.

Kaiser petitioned the Board for review, which was denied. The proposed decision and order became a final Board order. RCW 51.52.104, .106. Kaiser then appealed to

---

[1]The record reveals Mr. Overdorff had applied for Kaiser's voluntary retirement program in November 1982. Under this program, classified as the "70/80 Early Retirement" program, a worker can opt for voluntary retirement when he is 55 years of age or older and has at least 15 years with the company. Mr. Overdorff at the time of his retirement had worked for Kaiser 31 years. He was aware prior to his industrial injury that February 28, 1983, was his final day of work.

the superior court. Following a de novo review on the record, the court entered a judgment affirming the grant of time loss compensation. RCW 51.52.110, .115. It is from this judgment the present appeal arises.

First, Kaiser contends the court erred in determining Mr. Overdorff qualified for time loss compensation benefits under the workers' compensation act given his collection of retirement benefits during the same period. It asks this court to reverse the trial court decision, which affirmed the Board award of benefits.

Review is governed by RCW 51.52.140 and is limited to whether the trial court's findings of fact are supported by the evidence and whether its conclusions of law flow therefrom. *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.*, 33 Wn. App. 745, 748, 662 P.2d 391 (1982). All such inquiries begin with the well–settled premise the Industrial Insurance Act is to be liberally construed in favor of the injured worker to reduce "to a minimum the suffering and *economic loss* arising from injuries". (Italics ours.) RCW 51.12.010.

The applicable finding of fact challenged by Kaiser is that Mr. Overdorff was a temporarily totally disabled worker within the contemplation of the act during the nearly 1½–month period between surgery and his medical release date, and hence qualified for time loss payments. There is no question he was disabled during this period; both parties stipulate to this fact based upon his physical condition.

The sole remaining question is whether an individual collecting retirement benefits can simultaneously qualify for time loss payments for an industrial injury sustained prior to retirement. A recent amendment to RCW 51.32.090 answers this question in the negative.[2] Effective June 30, 1989, voluntarily retired workers are not eligible for time

---

[2]RCW 51.32.090(8) provides: "If the supervisor of industrial insurance determines that the worker is voluntarily retired and is no longer attached to the work force, benefits shall not be paid under this section."

loss benefits. This amendment, however, is not applicable since it became effective subsequent to Mr. Overdorff's injuries.[3] *See Ashenbrenner v. Department of Labor & Indus.,* 62 Wn.2d 22, 27, 380 P.2d 730 (1963) (in workers' compensation actions, the law in effect at the time of the injury is applicable). Regardless of this amendment's inapplicability, Kaiser asks this court to consider the legislative intent behind RCW 51.32.090 and find an individual collecting a retirement pension is disqualified from receiving time loss compensation benefits.

Although there are no Washington cases directly on point, other jurisdictions have dealt with similar factual scenarios. *See* 2 A. Larson, *Workman's Compensation* § 57.64(b), at 10–277 through 10–279 (1989). Some states base the award or denial of benefits on the reason behind the worker's retirement. If the claimant retired as a result of disability, he is entitled to benefits. *See Osowski v. Board of Coop. Educ. Servs.,* 78 A.D.2d 740, 432 N.Y.S.2d 729 (1980); *Mulpagano v. Crucible Steel Co. of Am.,* 53 A.D.2d 930, 385 N.Y.S.2d 193 (1976).[4] However, when the retirement is not the result of the industrial injury but motivated by financial gain, the claimant is ineligible for benefits. *See Cameron v. Carrier Air Conditioning Co.,* 85 A.D.2d 864, 446 N.Y.S.2d 499 (1981).

Other states, looking to the purpose behind the benefits, have ruled in favor of the injured worker. *Arizona Pub. Serv. Co. v. Industrial Comm'n,* 145 Ariz. 117, 700 P.2d 504 (Ct. App. 1985) and *Franco v. Industrial Comm'n,* 130 Ariz. 37, 633 P.2d 446 (Ct. App. 1981) held a claimant does not lose benefits based upon lost earning capacity by voluntarily retiring. Lost earning capacity, the Arizona courts hold,

---

[3]We note there has been no claim by Kaiser that the amendment to RCW 51.32.090(8) applies retroactively as a remedial, clarifying provision.

[4]*But see Karr v. State Accident Ins. Fund Corp.,* 79 Or. App. 250, 719 P.2d 35 (although claimant's retirement was necessitated by his physical condition, time loss benefits are awarded for lost wages and retired persons have none), *review denied,* 726 P.2d 377 (1986).

focuses on the individual's ability to work due to his physical condition rather than the purely economic consideration of income replacement.

Still other states view benefits based solely on lost income. Oregon holds the function of time loss payments is to enable an injured worker to support himself and his family while temporarily incapacitated by the industrial injury. Hence, the benefit is contingent upon the loss of wages: "If the claimant has retired voluntarily following the injury, he can suffer no loss of wages, because, by definition, he has no expectation of receiving wages." *Stiennon v. State Accident Ins. Fund Corp.,* 68 Or. App. 735, 738, 683 P.2d 556, 558, *review denied,* 691 P.2d 482 (1984). *See also Dawkins v. Pacific Motor Trucking,* 308 Or. 254, 778 P.2d 497, 499 (1989); *Karr v. State Accident Ins. Fund Corp.,* 79 Or. App. 250, 719 P.2d 35 (there can be no lost wages when worker has retired), *review denied,* 726 P.2d 377 (1986). *Cutright v. Weyerhaeuser Co.,* 299 Or. 290, 702 P.2d 403, 410 (1985) held the purpose of temporary total disability benefits is to restore the injured worker physically and economically to a self-sufficient status; such benefits are structured to help replace lost income during the healing and recovery process. Consequently, an injured worker is not entitled to time loss benefits while he is voluntarily retired. In *Mullaney v. Gilbane Bldg. Co.,* 520 A.2d 141 (R.I. 1987), the court denied an injured worker time loss benefits, since they are based not on physical disability but on loss of earning capacity. By voluntarily retiring, the worker surrenders his capacity to earn; thus, time loss benefits are not available. Given the similarity in statutory language and the general purpose behind time loss benefits, we follow the lead of the Oregon and Rhode Island courts.

In conjunction with other benefits provided under the Industrial Insurance Act, time loss compensation provides the injured worker a monetary buffer to lessen the economic impact of lost wages or income because of his injuries. RCW 51.12.010. These benefits allow the injured worker to concentrate on the physical recuperative process

by reducing the economic pressures which may well, absent such economic relief, force him back to work prior to recovery or stabilization of his condition. The ultimate goal is to provide temporary financial support until the injured worker is able to return to work. This goal cannot come to fruition when a worker voluntarily removes himself from the active labor force and opts, despite the presence of sufficient physical capacities, to decline further employment activity.[5] In this sense, it is implicit an individual suffer a potential adverse economic impact before he may qualify for time loss benefits. Mr. Overdorff, by his own admission, was not actively engaged in the work force after his retirement and up to the point of his surgery. Thus, he lacked the requisite adverse economic impact, *i.e.*, lost wages or income, to warrant the award of time loss benefits.

While historically time loss issues have focused on the injured worker's inability to engage in gainful employment on a temporary basis due to the residuals of his injuries,[6] the present fact pattern necessitates consideration beyond mere physical capacity. A distinction must be drawn between an individual actively engaged in employment, who is subsequently prevented from continuing work due to a prior industrial injury, and one voluntarily withdrawn from the work force for nearly 3 years, who interrupts his retirement to undergo corrective surgery.[7] We find the

---

[5]Mr. Overdorff testified that during the time period between retirement and his surgery, he could have been gainfully employed but chose not to be.

[6]Although the definitions section of RCW 51.08 specifies the meaning of "permanent total disability", it does not do so for "temporary total disability." RCW 51.08.160. In *Bonko v. Department of Labor & Indus.*, 2 Wn. App. 22, 25, 466 P.2d 526 (1970), this court held temporary total disability and permanent total disability differ only in the duration of the disability and not in character. Consequently, temporary total disability is a "condition temporarily incapacitating the workman from performing any work at any gainful occupation." *Bonko*, at 25.

[7]We recognize a person may retire from one employment and later go to work for a different employer. It is possible that an operation, as involved here, would interrupt the employment with the subsequent employer. That is not the case here.

allowance of time loss benefits under the present factual situation to be contrary to legislative intent.

■ Second, Kaiser contends the court erred in awarding Mr. Overdorff attorney fees. As attorney fees were awarded based on the underlying allowance of time loss benefits under RCW 51.52.130,[8] reversal on this issue necessitates reversal of the attorney fees award.

The award of time loss compensation and attorney fees to Mr. Overdorff is reversed.

SHIELDS, J., concurs.

THOMPSON, J. (dissenting)—I am constrained to dissent since I disagree with the majority's conclusion that the allowance of time loss benefits to Mr. Overdorff is contrary to the legislative intent of the workers' compensation act. This conclusion overlooks the clear and unambiguous language of RCW 51.32.090(3), which provides:

> As soon as recovery is so complete that the *present earning power* of the worker, at any kind of work, is restored to that existing at the time of the occurrence of the injury, the [time loss] payments shall cease.

(Italics mine.) The italicized phrase focuses on the worker's physical capabilities rather than upon the worker's economic need for income replacement. In denying time loss benefits, the majority cites the fact that Mr. Overdorff lacked the "requisite adverse economic impact" because he was voluntarily retired. A logical extension of this analysis

---

[8]RCW 51.52.130 provides in relevant part:

"If, on appeal to the court from the decision and order of the board . . . where a party other than the worker . . . is the appealing party and the worker's . . . right to relief is sustained by the court, a reasonable fee for the services of the worker's . . . attorney shall be fixed by the court. . . . In the case of self–insured employers, if the decision and order of the board is reversed or modified resulting in additional benefits by the litigation that would be paid from the accident fund if the employer were not self–insured, then the attorney fees fixed by the court for services before the court, only, and the fees of medical and other witnesses and the costs shall be payable directly by the self–insured employer."

would make an injured worker's net worth a relevant consideration in determining whether benefits should be awarded in any case.

In support of its conclusion, the majority relies upon RCW 51.12.010, which reads:

> This title shall be liberally construed for the purpose of reducing to a minimum the suffering and *economic loss* arising from injuries . . . occurring in the course of employment.

(Italics mine.) This general language cannot override the specific and unambiguous language of RCW 51.32.090(3). It would also appear somewhat ironic that a provision encouraging liberal construction is used to *limit* benefits to an injured worker. *Cf. Gaines v. Department of Labor & Indus.*, 1 Wn. App. 547, 552, 463 P.2d 269 (1969) (any doubt as to the meaning of the statute should be resolved in favor of the claimant for whose benefit it was passed).

The reference in RCW 51.32.090(3) to the worker's *present* earning power also casts doubt on the majority's conclusion. The use of the word "present" suggests that retirement benefits, which are in the nature of deferred compensation *already* earned, should not be considered in determining whether time loss benefits are payable. *Cf. Farver v. Department of Retirement Sys.*, 97 Wn.2d 344, 346, 644 P.2d 1149 (1982) (pension and other retirement plans are deferred compensation).

Finally, I note that the Legislature found it necessary to amend RCW 51.32.090 to add a section providing that workers who voluntarily retire and are no longer attached to the work force are not eligible for time loss benefits. RCW 51.32.090(8). Amendments of unambiguous statutes usually are intended as changes to the prior law. *State v. Standifer*, 110 Wn.2d 90, 94, 750 P.2d 258 (1988); *Port of Edmonds v. Public Empl. Relations Comm'n*, 103 Wn.2d 331, 336–37, 692 P.2d 814 (1985). *See also* 1A N. Singer, *Statutory Construction* § 22.30, at 265 (4th ed. 1985). The general rule is supported in this case by the legislative history connected with the passage of the amendment adding

the subsection dealing with retirement. The House Journal for February 12, 1986, includes this entry at page 320:

> Mr. McMullen: "Representative Wang, I'm concerned that we are *changing* the rules in midstream on certain people. Section 5 is dealing with retired people. Is it the intent of this legislation that it would only apply to the people who apply to reopen their claims after the effective date of this act and not before?"
>
> Mr. Wang: "Yes, Representative McMullen, that is correct."

(Italics mine.) I believe this exchange evidences not only that the legislation applies prospectively, rather than retroactively, but that it also changed existing law. Otherwise, Mr. McMullen would not have had any concern about retroactivity.

Based on the above reasons, I would affirm the trial court's judgment awarding time loss compensation to Mr. Overdorff.