[No. 31641-9-I.   Division One.   August 2, 1993.]

WEYERHAEUSER COMPANY, ET AL, *Respondents,* v. ADELBERT FARR, *Appellant.*

*Jorgen E. Schleer,* for appellant.

*Kathryn D. Fewell; Christine O. Gregoire, Attorney General,* and *Kathryn I. Eims, Assistant,* for respondents.

PEKELIS, J. — Adelbert Farr appeals from a summary judgment dismissing his workers' compensation claim. He contends the trial court erred in ruling that a voluntarily retired worker is precluded from obtaining permanent total disability benefits for a work-related injury that becomes aggravated after retirement. He also assigns error to the denial of his motion to exclude testimony. We affirm.

## I

On June 15, 1976, Adelbert Farr injured his back while working as a "tree faller" for Weyerhaeuser Company. Farr

made a claim for industrial injury with the Department of Labor and Industries (the Department). The claim was allowed and subsequently closed in October 1978, Farr having obtained time loss compensation and an award for permanent partial disability equal to 10 percent of total bodily impairment.

On February 14, 1979, the Department reopened Farr's claim for treatment owing to aggravation of the condition. Following back surgery on September 10, 1979, Farr resumed work as a tree faller. On July 25, 1980, the Department again closed Farr's claim, with a payment for time loss compensation and a permanent partial disability award of 25 percent of total bodily impairment.

According to Farr, his supervisor at Weyerhaeuser recommended that Farr retire because he had slowed down and the work was getting too dangerous for him. In July 1980, Farr took an early retirement,[1] pursuant to which he received monthly retirement benefits from Weyerhaeuser. Farr has not sought other employment since his retirement from Weyerhaeuser.

On July 24, 1985, Farr filed an application with the Department for aggravation of condition. The Department initially denied any additional award, but on reconsideration reopened the claim for treatment, and eventually closed the claim with an additional award of permanent partial disability for "a Category 3 of cervical impairment, less prior awards." Farr appealed this order to the Board of Industrial Insurance Appeals (Board), claiming that he was permanently and totally disabled and should be placed on the pension rolls. A hearing judge affirmed the Department's decision.

Farr then filed a petition for review of this last decision. The Board ultimately determined that Farr was permanently and totally disabled. It therefore reversed the Department's decision and remanded with directions that Farr be placed on the pension rolls.

---

[1] Farr retired and removed himself from the work force on July 14, 1980, but continued on Weyerhaeuser's payroll until July 30, 1980.

Weyerhaeuser then appealed the Board's decision to the superior court and moved for summary judgment, arguing that Farr was not entitled to a disability pension because he had voluntarily retired before becoming permanently and totally disabled. Farr cross-moved for partial summary judgment, contending that retirement does not affect a worker's right to permanent total disability benefits. Alternatively, Farr argued that summary judgment was inappropriate because an issue of fact existed as to whether he had voluntarily retired.

Weyerhaeuser's motion for summary judgment was granted. Before the judge entered a written order, however, Farr filed a "motion to prohibit" the use of Dr. McCollum's testimony and the admission of evidence that Farr received Social Security disability benefits. Farr also moved for sanctions against Weyerhaeuser for initiating ex parte contact with Dr. McCollum. These motions, which were heard by a judge other than the judge who had granted summary judgment, were denied without prejudice. Farr's motion for reconsideration was also denied, and the trial judge entered a final written order in Weyerhaeuser's favor.

Farr appeals.

II

Farr contends that the trial court erred in ruling that voluntary retirement renders a person ineligible for permanent disability benefits when an injury sustained during the course of employment becomes aggravated after retirement. The parties recognize that the 1986 amendment to RCW 51.32, which specifically renders voluntarily retired workers ineligible for permanent total disability compensation, applies prospectively only. *See* RCW 51.32.060(6). However, they disagree about the interpretation applicable to pre-1986 workers' compensation legislation.

It is already established that temporary disability benefits are not available to a voluntarily retired worker. *See Kaiser Aluminum & Chem. Co. v. Overdorff*, 57 Wn. App. 291, 788 P.2d 8 (1990). In *Overdorff*, a disability claimant sought time

loss compensation for temporary total disability under RCW 51.32.090. The claimant had applied for the employer's early retirement program before suffering a hernia in the course of employment, but retired after it occurred. Several years later, the claimant underwent surgery and then sought an order authorizing time loss compensation benefits.

■ The *Overdorff* majority acknowledged that section .090 (like section .060) had been amended to render voluntarily retired workers ineligible for temporary disability benefits, but that the amendment did not apply to Overdorff's claim. Nonetheless, the Industrial Insurance Act was construed to preclude voluntarily retired workers from recovering time loss compensation for temporary disability. The majority examined the purpose of temporary benefits and agreed with those courts that have construed temporary benefits as a replacement for lost income. 57 Wn. App. at 295.

> The ultimate goal is to provide temporary financial support until the injured worker is able to return to work. This goal cannot come to fruition when a worker voluntarily removes himself from the active labor force and opts, despite the presence of sufficient physical capacities, to decline further employment activity. In this sense, it is implicit an individual suffer a potential adverse economic impact before he may qualify for time loss benefits. Mr. Overdorff, by his own admission, was not actively engaged in the work force after his retirement and up to the point of his surgery. Thus, he lacked the requisite adverse economic impact, *i.e.*, lost wages or income, to warrant the award of time loss benefits.

(Footnote omitted.) 57 Wn. App. at 296. The majority opinion expressly distinguishes "between an individual actively engaged in employment, who is subsequently prevented from continuing work due to prior industrial injury, and one voluntarily withdrawn from the work force . . . who interrupts his retirement to undergo corrective surgery." 57 Wn. App. at 296-97. The allowance of benefits under the latter situation was held to be contrary to legislative intent.

We see no significant distinction between benefits for temporary total disability and those for permanent total disability. Hence, we conclude that *Overdorff* controls the outcome

here. As the *Overdorff* majority observed, "temporary total disability and permanent total disability differ only in the duration of the disability and not in character." *Overdorff*, 57 Wn. App. at 296 n.6 (citing *Bonko v. Department of Labor & Indus.*, 2 Wn. App. 22, 25, 466 P.2d 526 (1970)).[2]

Farr attempts to distinguish *Overdorff* on the grounds that permanent disability compensation is fundamentally different from temporary disability compensation.[3] Farr argues that the purpose of permanent awards is not the purely economic one of income replacement. Farr points out that a worker who receives such an award may elect to have payments continue to dependents after his or her death, even if he or she dies from a cause unrelated to the industrial injury. *See* RCW 51.32.050, .067. Also, benefits for permanent total disability continue after ordinary retirement age.

Farr finds indirect support for this theory in the precedent relied upon by the *Overdorff* majority. He contends that the Oregon cases cited in *Overdorff*, like the *Overdorff* case itself, involved only the issue of temporary total disability. But Farr has failed to recognize the extension of Oregon precedent to *permanent* total disability. *See In re Stephen*, 308 Or. 41, 774 P.2d 1103 (1989). In *Stephen* the Oregon Supreme Court applied *In re Cutright*,[4] ruling that payments for permanent total disability, like those for temporary total disability, are based upon a theory of wage

---

[2]*Bonko* defined temporary total disability as a "condition temporarily incapacitating the workman from performing any work at any gainful occupation." 2 Wn. App. at 25. By contrast, " '[p]ermanent total disability' " is defined by statute (in part) as a "condition permanently incapacitating the worker from performing any work at any gainful occupation." RCW 51.08.160.

[3]Farr also argues that the 1986 amendments pertaining to voluntary retirement necessarily imply that pre-1986 law permitted disability awards for voluntarily retired employees. This interpretation is also urged by the *Overdorff* dissent. We do not find it persuasive.

[4]299 Or. 290, 702 P.2d 403 (1985), *cited with approval in Overdorff*, 57 Wn. App. at 295.

replacement, not mere lost earning capacity. 308 Or. at 45-46.

As the *Overdorff* majority implicitly recognized, the statutory scheme in Washington is analogous to the workers' compensation legislation in Oregon. Temporary total disability awards are determined by the same schedule applicable to permanent disability awards. RCW 51.32.090(1). The schedule is tied to the actual amount of the worker's wages. RCW 51.32.060(1)(a)-(l). Moreover, as in Oregon, an award for permanent total disability is authorized only for a "worker". RCW 51.32.060(1). A "worker" is one "who *is engaged* in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment". (Italics ours.) RCW 51.08.180. As the *Stephen* court observed, "[a] person who voluntarily withdraws from the work force is not entitled to [permanent total disability] benefits . . . because she or he is no longer a worker" under the statutory definition. 308 Or. at 47.

■ We find these analogies persuasive and conclude that permanent total disability benefits under RCW 51.32 are intended as a replacement for lost income, and that a person who is voluntarily withdrawn from the work force is no longer a "worker" as defined in the statute. Accordingly, we hold that under Washington law, a person who voluntarily withdraws from the work force and subsequently becomes totally disabled is not entitled to permanent total disability benefits.

Alternatively, Farr argues that even if voluntary retirement disqualifies a worker from later receiving a permanent total disability award, in his case he did not voluntarily retire. He contends that because Weyerhaeuser recommended retirement owing to his injury, his injury played a significant part in his decision to leave. At a minimum, according to Farr, this presents a material issue of fact that should not have been resolved on summary judgment.

We find no factual issue remaining here. The only conclusion that can be drawn from the record in this case is that Farr voluntarily removed himself from the general labor

force despite having the physical capacity to engage in gainful employment at the time he retired. The fact that his partial injury may have played an indirect role in his decision to retire *from Weyerhaeuser* is irrelevant to the legal question at issue: whether Farr's retirement constituted voluntary withdrawal from the general work force. *See In re Dawkins*, 308 Or. 254, 256 & n.1, 778 P.2d 497, 498 (1989) (focus is on whether the worker has withdrawn from the work force rather than on retirement). Although Farr introduced evidence to show that he had intended to remain on the job at Weyerhaeuser, he presented no evidence to indicate he intended or tried to work *following* his retirement but was unable to do so.

Indeed, Farr is precluded from arguing at this point that he could not have reentered the work force in some capacity following his retirement. It is undisputed that the Department found Farr to be only *partially* disabled as of July 25, 1980. This finding is res judicata as to his condition at that point. *See, e.g., Wendt v. Department of Labor & Indus.*, 18 Wn. App. 674, 685, 571 P.2d 229 (1977) (fact of permanent partial disability finally determined in prior proceeding is res judicata in subsequent proceeding to reopen claim). While the Board eventually found that Farr subsequently became *totally* disabled and thus could not have obtained any employment, the record evidences that this was sometime after his decision to retire.[5] Although Farr's condition may have worsened in the 5 years between his retirement in 1980 and his application to reopen his claim, there is no evidence showing that Farr wanted to engage in some form of gainful employment during this period but was physically unable to obtain any employment.

There is, therefore, no evidence to create a triable issue as to Farr's inability to engage in some form of gainful employment at the time of his retirement and for a period thereafter. This, coupled with Farr's testimony that he did not

---

[5]Mr. Farr did not seek to reopen his claim until July 24, 1985. The Department reopened the claim effective July 16, 1985, in order to pay for neck surgery performed on July 23, 1985.

seek other employment, establishes that Farr had voluntarily withdrawn from the work force and had chosen not to reenter it.

We conclude, as a matter of law, that Farr voluntarily withdrew from the work force. Farr presented no evidence probative of a desire or effort to find employment after he left Weyerhaeuser, nor can it be inferred that such efforts would have then been futile owing to the industrial injury. Hence, under *Overdorff*, Farr suffered no adverse economic impact. *See* 57 Wn. App. at 296. We therefore affirm the summary judgment.

## III

Farr next assigns error to the trial court's refusal to exclude the testimony of his former treating physician, arguing that Weyerhaeuser engaged in ex parte contact prohibited by *Louden v. Mhyre*, 110 Wn.2d 675, 756 P.2d 138 (1988). However, after Farr had briefed this issue, the Supreme Court decided *Holbrook v. Weyerhaeuser Co.*, 118 Wn.2d 306, 822 P.2d 271 (1992). The *Holbrook* court clearly held that the *Loudon v. Mhyre*, *supra*, prohibition on ex parte contact between defendant's attorney and plaintiff's treating physician in a personal injury action does not extend to proceedings before the Board of Industrial Insurance Appeals. Accordingly, Farr has correctly conceded that this assignment of error is foreclosed.[6]

Farr continues to argue, however, that the testimony of his former treating physician was inadmissible expert opinion under CR 26. Farr also contends that the fact that he received Social Security benefits was inadmissible to show that he had indeed retired from the work force.

In light of our affirmance of the dismissal of Farr's claim as a matter of law, these testimonial issues have no bearing on our disposition of this appeal. Neither Dr. McCollum's

---

[6]Farr's appeal from the denial of sanctions for Weyerhaeuser's alleged violation of the hearing examiner's discovery order does not warrant extended discussion. Given the Supreme Court's decision in *Holbrook*, *see* 118 Wn.2d at 313, the hearing examiner's ruling is dubious at best; we certainly cannot say that the trial court's subsequent refusal to award sanctions was an abuse of its discretion.

adverse testimony nor the evidence of Farr's receipt of Social Security benefits was necessary to the trial court's conclusion that, as a matter of law, Farr had voluntarily detached himself from the work force. Hence, we do not reach these assignments of error.

Affirmed.

WEBSTER, C.J., and COLEMAN, J., concur.

Review denied at 123 Wn.2d 1017 (1994).