Argued and submitted January 5, reversed and remanded April 28, 1999

In the Matter of the Compensation of
Bobbi J. Blakely, Claimant.

SAIF CORPORATION
and Douglas County School District #19,
*Petitioners,*

*v.*

Bobbi J. BLAKELY,
*Respondent.*

(WCB 97-0529M; CA A101506)

981 P2d 347

Julene M. Quinn argued the cause and filed the briefs for petitioners.

Martin J. McKeown argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Petitioners, an employer and its insurer, seek review of an "own motion" order of the Workers' Compensation Board, ORS 656.278, awarding claimant temporary disability benefits. ORS 656.210. They assert that the Board's determination that claimant was willing to work, which is a prerequisite to the receipt of such benefits, was not supported by the evidence on which the Board relied. We agree and, consequently, reverse and remand for reconsideration.

■    Claimant sought temporary disability compensation benefits, pursuant to the Board's own motion authority,[1] as a result of arthroscopic knee surgery in November 1997. To be entitled to such benefits, claimant had to prove that she was "in the work force" at the time of that surgery. *See Dawkins v. Pacific Motor Trucking*, 308 Or 254, 258, 778 P2d 497 (1989); *Weyerhaeuser Co. v. Kepford*, 100 Or App 410, 414, 786 P2d 745, *rev den* 310 Or 71 (1990). A claimant is deemed to be "in the work force" if:

"a.    The claimant is engaged in regular gainful employment; or

"b.    The claimant, although not employed at the time, is willing to work and is making reasonable efforts to obtain employment; or

"c.    The claimant is willing to work, although not employed at the time and not making reasonable efforts to obtain employment because of a work-related injury, where such efforts would be futile." *Dawkins*, 308 Or at 258 (citations and footnotes omitted).

The circumstances in this case are somewhat confused by the fact that in November *1996*, a year before the surgery involved here, claimant had also undergone arthroscopic knee surgery and had, ultimately, recovered own motion temporary disability benefits with respect to that surgery. In that instance, the Board had concluded that claimant was in the work force at the time of the disability because she had been engaged in regular gainful employment up to the time of the surgery. Claimant's treating physician, Dr.

---

[1] Claimant's aggravation rights had expired in July 1984.

Mohler, rendered an opinion on March 26, 1997, that claimant was medically stationary following the November 1996 surgery, and that claim closed.

Immediately before the November *1997* surgery, claimant requested time-loss benefits with respect to that surgery, and the insurer, SAIF Corporation, opposed that request, asserting that "no proof has been provided to show [claimant] is in the work force." The Board evaluated that request under *Dawkins*'s third category—willingness to work but not seeking employment because the work-related injury renders such efforts futile—and initially denied benefits for want of proof. On reconsideration, the Board reiterated that denial, reasoning that, although certain medical evidence demonstrated claimant's physical *inability* to work, there is no evidence of claimant's *willingness* to work as of the time of the November 1997 surgery.

Claimant then sought reconsideration for a second time, based on her submission of additional evidence consisting of a December 17, 1997, cover letter and statement by Mohler in which he stated that claimant "has had severe right knee pain since her [prior] arthroscopic knee surgery on 11/19/96 and in my opinion could not be part of the work force during that time."[2] From that statement, the Board majority concluded:

> "Furthermore, Dr. Mohler's opinion establishes that claimant remained unable to work due to the compensable injury after that November 19, 1996 surgery. Thus, there was essentially no change in claimant's work status from the time of the November 19, 1996 surgery until the November 21, 1997 surgery. Because there was no change in claimant's work status, we find that she remained in the work force by virtue of our prior findings regarding the work force issue. Consequently, at the time of the November 21, 1997 surgery, claimant met the third criterion of *Dawkins* - she was not employed, but she was willing to work and was not seeking work because a work-related injury had made such efforts futile."

---

[2] For undisclosed reasons, the actual text of Mohler's letter and statement are not in the record. We quote the Board's quotation of that letter, which neither party disputes.

One Board member dissented:

> "[A]lthough willingness to work ultimately may be a subjective factor, claimant still has the burden of proving that factor, as well as the other elements of the work force issue. Here, given the fact that claimant has proved that, due to the compensable injury, any reasonable work search would have been futile, proof of willingness to work could include a sworn affidavit from claimant regarding her willingness to work if not for her work injury. * * *

> "[C]laimant has submitted no evidence regarding her willingness to work during the relevant time regarding her current own motion claim, *i.e.*, her November 1997 surgery."

■ On review, SAIF invokes the Board dissent's analysis. Although SAIF asserts that the Board "failed to apply the correct legal standard" in determining whether claimant was in the work force, the substance of SAIF's complaint is that the evidence on which the Board purported to rely does not support its conclusion. Specifically, although the Board did, in fact, explicitly apply the *Dawkins* analysis and expressly determined that "at the time of the November 21, 1997 surgery, claimant * * * was willing to work," the only evidence on which the Board relied[3]—Mohler's December 19, 1997, letter—does not support that conclusion.

■ SAIF is correct. Nothing in Mohler's December 19, 1997, statement, as described and quoted by the Board, touches on claimant's *willingness* to work. That statement refers only to claimant's physical ability to work, and not to her willingness to work, on the date of surgery. It may be that claimant's physical inability to work would have rendered any efforts to obtain employment futile. However, *Dawkins* is explicit that such futility is distinct from willingness to

---

[3] As the Board correctly noted in its initial opinion, representations by claimant's counsel that claimant was willing to work did not "meet claimant's burden of proving the willingness to work element of the work force issue."

On review, claimant notes that, in March 1997, certain of her medical records were sent to vocational rehabilitation, and she asserts that that transmittal implies participation in rehabilitation after the 1996 surgery, which, in turn, could imply willingness to work before, and at the time of, the 1997 surgery. There is, however, no evidence in the record that claimant actually participated in rehabilitation, much less of the extent of any such participation. In all events, the Board did not purport to rely on the transmittal of the medical records as evidence of willingness to work.

work—that is, that proof of the former does not, without more, establish the latter—and the Board did not purport to hold otherwise. Thus, the Board's determination of willingness to work was unsupported by the evidence on which it relied. Because that unsupported determination was essential to the Board's ultimate conclusion that claimant was "in the work force" and, thus, eligible for temporary disability benefits at the time of the November 1997 surgery, we reverse and remand for the Board to reconsider the "willingness to work" issue. *See Armstrong v. Asten-Hill Co.*, 90 Or App 200, 205-06, 752 P2d 312 (1988).

Reversed and remanded for reconsideration.