Argued and submitted October 27, 1998, affirmed March 1, 2000

In the Matter of the Compensation of
Earnest E. Lasley, Claimant.

Earnest E. LASLEY,
*Petitioner,*

*v.*

SAIF CORPORATION
and Ontario Rendering,
*Respondents.*

(WCB No. 94-03312; CA A95509)

997 P2d 289

David W. Hittle argued the cause for petitioner. On the brief were Robert Wollheim and Welch, Bruun, Green

& Wollheim, and Douglas J. Rock and Coughlin, Leuenberger & Moon.

David L. Runner argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

Deits, C. J., dissenting.

## EDMONDS, P. J.

Claimant seeks review of a 1996 Workers' Compensation Board order that held that claimant was not permitted to present additional evidence at the hearing and that he was not permanently and totally disabled. Claimant argues that he was denied due process of law under the Fourteenth Amendment. We affirm.

Claimant originally injured his lower back in 1979. A claim for the injury was accepted and first closed in 1980 with no award of permanent disability. Claimant requested a hearing and was awarded 15 percent unscheduled permanent partial disability (PPD) in 1982. His claim was reopened in 1984 and remained open for the next several years. The claim was then closed again in January 1992. Claimant's award of unscheduled PPD was increased to 51 percent, and he was also granted an award of 36 percent scheduled PPD for his left leg.

In the meantime, claimant had been evaluated for vocational assistance in 1989. As a result, he was assigned to an authorized training program. In June 1989, claimant's vocational assistance program was terminated because he failed to cooperate in the development of a return-to-work plan. Claimant challenged the termination of his eligibility, but ultimately it was upheld. *See Lasley v. Ontario Rendering*, 114 Or App 543, 836 P2d 184 (1992).

In March 1992, claimant requested reconsideration of the January 1992 determination order. He raised issues of premature closure and the extent of his permanent disability to the Department of Consumer and Business Services (the Department). The Department sent the parties a notice that informed them that they could present any additional information on reconsideration. In April 1992, the Department issued an order on reconsideration that set aside the January 1992 determination order as premature. Employer requested a hearing and sought to have the January 1992 determination order reinstated. Also, claimant requested a hearing on the issue of the extent of his disability. At the hearing, the issues were limited by the administrative law judge (ALJ) to

the closure issue raised by employer. The April 1992 reconsideration order was vacated by the ALJ's order in March 1993. On appeal, the Board affirmed the ALJ's decision, and that decision was not appealed further.

After the January 1992 determination order was set aside by the Department, but before the ALJ ruled, the Department issued another determination order in February 1993. Claimant requested reconsideration of that order, but before the reconsideration process was completed, the hearings division reinstated the January 1992 determination order. Left unresolved was the extent of the disability. The Department then issued an order on reconsideration in April 1993 in which it declined to complete the reconsideration of the February 1993 determination order. Neither party requested a hearing on that order, and it became final by operation of law.

In March 1994, claimant filed a new request for hearing on the extent of disability and sought permanent total disability. That request for hearing led to the proceeding at issue here. The hearing on claimant's request began in August 1995. By that time, ORS 656.283(7) had been amended by Oregon Laws 1995, chapter 332, section 34. That amendment made evidence regarding the extent of disability inadmissible at hearing unless the evidence had been submitted on reconsideration. Aware of the impediment to admitting additional evidence as the result of the retroactive effect of the amendment, the ALJ proceeded with the hearing, limiting the record to that presented to the Department on reconsideration. Claimant objected, arguing that he had been deprived of due process because of the amendment. In response, the ALJ permitted the parties to introduce additional documents and testimony as offers of proof but limited the offers of proof to the direct examination of witnesses. Included in the offer of proof by employer was the testimony of SAIF's vocational expert, Stipe. Ultimately, the ALJ concluded that he had jurisdiction to review the January 1992 and February 1993 determination orders. In his decision on the merits, he modified the determination order and denied claimant's request for permanent total disability (PTD).

Claimant appealed to the Board, and it adopted the ALJ's order with supplementation. The Board ruled that it was unnecessary to address claimant's constitutional argument concerning the retroactive application of ORS 656.283(7) because, after having considered the excluded evidence, it found that the evidence in the offers of proof would not have changed its conclusion about the claim for PTD. Specifically the Board said:

"Claimant relies on the opinion of Dr. Carroll, his current family physician, who stated in February 1995 that claimant will never be able to perform employment due to his physical pain and related depression. Dr. Dahlin subsequently concurred with Dr. Carroll's assessment. In addition, claimant relies on his own testimony and the testimonies of his wife and vocational expert, Mr. Hughes, who opined that claimant is unable to engage in gainful employment due to his physical limitations and psychological difficulties. Mr. Hughes also opined that claimant was employable in 1993.

"Notwithstanding the medical opinions declaring claimant unemployable in 1995 (and in 1993), we find that claimant was not medically incapacitated from obtaining and performing work in 1989 and 1991. We base our finding on the contemporaneous opinions of Dr. Dahlin, who reported that claimant was capable of light to sedentary employment in 1989 and capable of sedentary employment in 1991. Yet, claimant did not cooperate with the development of a return-to-work plan in 1989, resulting in termination of vocational assistance and potential retraining, and there is no evidence that he has made any further efforts to obtain employment.

"For these reasons, even if we considered the evidence excluded by the ALJ, we would still find that claimant has not carried his burden of proving that he is willing to seek employment and that he has made reasonable efforts to obtain employment. Accordingly, we agree with the ALJ that claimant is not entitled to permanent total disability benefits." (Exhibit references omitted.)

On review to this court, claimant reiterates his due process argument. In *Koskela v. Willamette Industries, Inc.,* 159 Or App 229, 978 P2d 1018, *rev allowed* 329 Or 318 (1999),

we held that the claimant's due process rights were not violated by the application of ORS 656.283(7), which, as amended by Oregon Laws 1995, chapter 332, section 34, makes evidence regarding the extent of disability inadmissible in the hearing process if it "was not submitted at the reconsideration required by ORS 656.268[.]" The constitutional challenge in *Koskela* was a facial attack, and we expressly left open the question whether the retroactive effect of the 1995 amendment could result in a deprivation of due process where the claimant's opportunity to present evidence in the reconsideration process had passed but the hearing process was not complete at the time that the amended statute took effect. *See Koskela*, 159 Or App at 241 n 7. This case presents that question.

■ ■ Whether a statute denies due process as applied depends on the particular circumstances of each case. *Mathews v. Eldridge*, 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976). Claimant argues that he was denied due process because he was not given the opportunity to cross-examine SAIF's vocational expert. The ALJ told the parties that the offer of proof "will be for the purpose of allowing each party to put on the best of its evidence" without being subject to cross-examination. He explained, "I'm only required to have each of you provide me with a statement of what your witnesses would say. But I am willing to let your witnesses have their say." Counsel for SAIF responded to the ALJ, "[t]he only witness I have is a vocational expert." Thereafter, claimant's counsel moved to prevent SAIF from making any offer of proof because "they're not taking the position that any additional evidence should come in." The ALJ responded that either party could put on an unrestricted offer of proof that would not be subject to cross-examination.

Claimant then called himself, his wife, and his expert witness, Hughes, as his witnesses in his offer of proof and rested. He offered no testimony from SAIF's expert, Stipe, although the ALJ's ruling would have permitted him to call Stipe as his own witness. SAIF then offered a videotape of claimant, a photograph of claimant's residence and the testimony of Stipe. Also, both parties offered written exhibits as part of the offers of proof. The issue then is whether, under those circumstances, claimant has been denied due process

in presenting his claim for permanent total disability by the retroactive effect of ORS 656.283(7) in light of the fact that the Board considered the evidence in the offers of proof.

ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

Under the statute, claimant must prove that, "but for the compensable injury, [he] (1) is or would be willing to seek gainful employment and (2) has or would have made reasonable efforts to obtain such employment" unless seeking such work would have been futile. *SAIF v. Stephens*, 308 Or 41, 48, 774 P2d 1103 (1989).

The record on reconsideration and claimant's testimony in his offer of proof are uncontroverted that he has not made any effort to work from 1985 to 1995.

"Q[:]  When is the last time you worked?

"[Claimant:]  '85.

"* * * * *

"Q[:]  How come haven't you worked since 1985?

"[Claimant:]  I was never released from the doctors. And after my surgery, instead of being better, I got worse.

"Q[:]  Have you wanted to return back to work?"

"[Claimant:]  Yes, I have.

"Q[:]  Why haven't you even though you wanted to?

"[Claimant:]  On account of, I'm unable to.

"Q[:]  How come you are unable to return back to work?

"[Claimant:]  Just deterioration and confusion."

Before the Board, claimant relied on the opinion of Dr. Carroll who stated in February 1995 that claimant would never be able to perform gainful employment due to his physical pain and related depression. Dr. Dahlin concurred with Dr. Carroll's assessment in a letter dated March 1994, which was considered by the Board as part of claimant's offer of

proof. The Board was not persuaded by that evidence. It expressly based its ruling on Dr. Dahlin's opinions in 1989 and 1991 that claimant was able to work at that time in addition to the fact that he had not cooperated with vocational assistance efforts in 1989. That evidence was not part of the offer of proof and had been part of the record on reconsideration. Because of that evidence, the Board concluded that claimant had not carried his burden of proving under *Stephens* that he was willing to seek and had made reasonable efforts to obtain employment when it would not have been futile.[1]

Neither SAIF's expert nor claimant's expert testified about claimant's physical ability to perform work in 1989 and 1991. All of their testimony focused on job availability in 1995 in light of claimant's condition and the degree of his impairment at that time. Claimant's inability to cross-examine Stipe could not have changed the record that during part of the time in question claimant had been able to work but had not made an effort to seek work and had, in fact, been terminated from a vocational assistance program. As to claimant's offer of proof, there is nothing in the record to suggest that claimant was prevented from calling Dr. Dahlin to recant his opinion about claimant's physical status in 1989-91. Moreover, claimant himself had the opportunity to address that issue and did in fact testify that he had been unable to work since 1985. Under the circumstances, there is no due process violation that could have played any role in the Board's decision regarding claimant's failure of proof.[2]

Affirmed.

---

[1] Claimant does not argue that the Board could not rely on his physical status and conduct between 1989 and 1991, when it concluded that he did not meet his burden under ORS 656.206(3).

[2] The dissent says that, although the majority opinion accurately identifies the question of whether the procedures in this case satisfied due process, it "never answers that question." 165 Or App at 642. It also says that the procedures "effectively prevented claimant from presenting any evidence of the kind in question at any stage of the process," *id.*, that the majority opinion stands for the proposition "that federal constitutional error is presumptively harmless" and that "due process was unnecessary." *Id.* at 644. As should be evident from this opinion, none of those assertions is an accurate characterization of the holding of the opinion. The opinion stands for the simple proposition that, on these facts, the cross-examination of SAIF's expert could have made no difference in the outcome before the Board.

**DEITS, C. J.,** dissenting.

The majority correctly states:

"In *Koskela v. Willamette Industries, Inc.*, 159 Or App 229, 978 P2d 1018, *rev allowed* 329 Or 318 (1999), we held that the claimant's due process rights were not violated by the application of ORS 656.283(7), which, as amended by Oregon Laws 1995, chapter 332, section 34, makes evidence regarding the extent of disability inadmissible in the hearing process if it 'was not submitted at the reconsideration required by ORS 656.268[.]' The constitutional challenge in *Koskela* was a facial attack, and we expressly left open the question whether the retroactive effect of the 1995 amendment could result in a deprivation of due process where the claimant's opportunity to present evidence in the reconsideration process had passed but the hearing process was not complete at the time that the amended statute took effect. *See Koskela*, 159 Or App at 241 n 7. This case presents that question." 165 Or App at 638-39.

However, notwithstanding its accurate identification of the question in the case, the majority never answers that question. I will therefore begin by doing so.

The most fundamental requirement of due process is that the procedures that are afforded to affected persons be sufficient "to insure that they are given a meaningful opportunity to present their case." *Mathews v. Eldridge*, 424 US 319, 349, 96 S Ct 893, 47 L Ed 2d 18 (1976). The procedures here did not suffice because, as applied, they effectively prevented claimant from presenting evidence of the kind in question at any stage of the process. Claimant was under no compulsion to produce the evidence at the time that the reconsideration procedures were conducted. However, by the time of the hearing, he had no opportunity to present evidence that had not been adduced at the reconsideration stage.

SAIF and employer contend that claimant *could* have presented much, if not all, of the evidence in question in the reconsideration process and that the fact that he was not *required* to do so at the relevant time in order to preserve his ability to rely on the evidence in the hearing process should

not assist him now. According to SAIF and employer, claimant "simply failed to use [the] opportunity" that was available for the presentation of evidence on reconsideration, and "due process does not guarantee 'two bites of the apple.' " However, SAIF's and employer's metaphor is inapt. The better analogy for this situation is one in which a customer chooses one apple over another at a fruit stand and, after paying for it with his last dime, is informed by the storekeeper that he is not allowed to eat it without first having eaten the other apple.

It is difficult to imagine a more effective way of defeating the right to a fair hearing than by imposing new preservation requirements for what may be presented at the hearing after it is too late to satisfy them. That is precisely what the retroactive application of the amendment to ORS 656.283(7) does under the facts here. Consequently, I agree with claimant that his right to due process of law was violated.

SAIF and employer further argue, however, that any violation of claimant's due process rights in connection with the exclusion of the evidence that he offered at the hearing was harmless, because the ALJ took offers of proof of the excluded evidence, and the Board made an "alternative" finding that, "even if we considered the evidence excluded by the ALJ, we would still find that claimant has not carried his burden of proving that he is willing to seek employment and that he has made reasonable efforts to obtain employment." Although the majority does not explicitly say so, the apparent basis for its holding is its agreement with that harmless error argument or some variation of it.

Seemingly, the harmless error argument is close to self-refuting because, as claimant points out, he was given no opportunity at the hearing to cross-examine the witnesses whose testimony his opponent offered in the offer of proof itself, let alone to cure any antecedent defects in his ability to confront the proponents of adverse evidence. Nevertheless, the majority postulates that, notwithstanding his exclusion of evidence pursuant to the amended ORS 656.283(7), the ALJ allowed the parties to "put on the best of [their] evidence" in the guise of the offers of proof. The majority then

engages in an elaborate analysis of the evidence that was before the Board, via the offers of proof or otherwise, as well as the unpursued opportunities that the offers of proof ostensibly gave claimant to present other items of evidence. Based upon its assessment of the evidence that was—or was not—advanced in the offers of proof or on reconsideration, and its assessment of the Board's response to the evidence that was before it, the majority concludes that any limitation on claimant's ability to produce or to refute evidence "could [not] have played any role in the Board's decision regarding claimant's failure of proof." 165 Or App at 641.[1]

Although some of the particulars in the majority's reasoning are elusive, its ultimate point is clear: The majority concludes that any denial of claimant's constitutional right to present his case could not have affected the result, either because he would not have presented any different evidence or cross-examination than he did even if he had been given a fair opportunity, or because the Board would have made the same decision no matter what evidence was presented to it.

In my view, the majority's reasoning stands the issue on its head. The fact that claimant was able to present only the evidence that he did through the inadequate procedures that were afforded him is not a basis for assuming that he *could not* have made a different or better showing if different procedures had been provided. Rather, it is a basis for assuming that the inadequate procedures interfered with claimant's ability to present his case. Because I do not share the majority's view that federal constitutional error is presumptively harmless, I do not agree with the majority that due process was unnecessary in this case and, therefore, I respectfully dissent.

---

[1] I accept, for purposes of this occasion only, the correctness of the majority's unusual understanding that an offer of proof *can* serve to cure the erroneous exclusion of evidence, as distinct from performing its normal function of preserving the error for appellate review.