110 P.3d 253 (2005)
Larry D. JACOBSEN, Respondent,
v.
DEPARTMENT OF LABOR AND INDUSTRIES of the State of Washington, Appellant.
No. 31376-6-II.
Court of Appeals of Washington, Division 2.
April 19, 2005.
As Amended on Reconsideration June 29, 2005.
Carol L. Casey, Attorney at Law, Port Orchard, WA, for Respondent.
Penny L. Allen, Attorney at Law, Ofc. of the Atty. General, Olympia, WA, for Appellant.
HUNT, J.
¶ 1 The Department of Labor and Industries (Department) appeals the trial court's exclusion of temporary total disability benefits (TTD or "time loss") from the prior benefit payments it deducted from Larry Jacobsen's permanent total disability pension reserve. The Department argues that such deduction is necessary to prevent Jacobsen's double recovery for his disability and to further *254 the purpose of RCW 51.32.080(4). Holding that the statute neither required nor allowed deduction of Jacobsen's time loss benefits from his pension, we affirm.

FACTS

I. ADJUDICATION OF JACOBSEN'S CLAIM

A. Initial "Time Loss" (Temporary Total Disability) Compensation
¶ 2 On April 25, 1980, Larry Jacobsen injured his back in the course of his employment with Short Haul, Inc. On May 1, 1980, he filed a worker's compensation claim. The Department issued an order paying him time loss[1] compensation for his temporary total disability beginning April 26, 1980. Jacobsen underwent treatment to restore his ability to work.[2]
¶ 3 On November 25, 1987, the Department attempted to close Jacobsen's claim and to award him $9,000 for permanent partial disability (PPD), based on his physical and mental health impairments stemming from his injury on the job in April 1980. When Jacobsen appealed, the Department reinstated his claim and continued until June 24, 1989, to pay him time loss payments for his temporary total disability.
¶ 4 On November 14, 1989, the Department again attempted to close Jacobsen's claim with an increased PPD award of $17,250, less previously paid PPD awards. Jacobsen again appealed. Again, the order did not become final. It appears from the record that while Jacobsen's claim remained open, the Department continued to pay him time loss.[3]
¶ 5 On October 4, 1990, the Department issued a closing order, increasing Jacobsen's permanent partial disability award to $30,000. This time, Jacobsen did not appeal, and the order became final.

B. Reopening of ClaimPermanent Total Disability
¶ 6 On November 7, 1991, Jacobsen filed an aggravation claim.[4] The Department determined that Jacobsen's condition had objectively worsened compared to his earlier condition on October 4, 1990. On June 18, 1992, the Department issued an order reopening Jacobsen's claim effective October 24, 1991, and it reinstated Jacobsen's time loss payments. The Department continued to pay him time loss compensation for temporary total disability, resulting from aggravation of his original injury, until November 15, 2000.
¶ 7 On January 5, 2001, the Department issued an order finding Jacobsen permanently totally disabled; it placed him on the pension rolls effective November 16, 2000. This order directed that $19,309.30, of the $30,000 in permanent partial disability it had previously paid Jacobsen, be deducted from his pension reserve fund. Jacobsen appealed the Department's order to the Board of Industrial Insurance Appeals.

C. Appeals
¶ 8 A Board of Industrial Insurance Appeals (Board) administrative law judge issued a proposed decision, instructing the Department to take into consideration the amount of all time loss compensation the Department had paid Jacobsen after November 25, 1987.[5] *255 Jacobsen appealed to a three-member Board, which denied his petition and adopted the proposed decision as its final order.
¶ 9 Jacobsen appealed the Board's final order to Grays Harbor County Superior Court. He challenged the Board's allowing the Department to include time loss compensation in determining what his permanent total disability (PTD) compensation would have been had he received a pension in the "first instance." Reviewing the administrative record in its appellate capacity, the superior court held that RCW 51.32.080(4) did not authorize the Department to consider previously paid time loss compensation in determining Jacobsen's "first instance" calculation. The superior court entered findings of fact and conclusions of law, reversed the Board's order, and remanded to the Department to recompute any permanent partial disability deduction from Jacobsen's pension reserve.
¶ 10 The Department appeals, raising the following issue: Does RCW 51.32.080(4) require or allow the Department to take into consideration prior temporary total disability payments (time loss) to Jacobsen, in addition to permanent partial disability payments, when calculating the deduction from Jacobsen's permanent total disability pension reserve? We answer no.

ANALYSIS

I. STANDARD OF REVIEW
¶ 11 Courts retain the ultimate authority to interpret a statute. Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 325-26, 646 P.2d 113 (1982), cert. denied, 459 U.S. 1106, 103 S.Ct. 730, 74 L.Ed.2d 954 (1983). Construction of a statute is a question of law, which we review de novo under the error of law standard. City of Pasco v. Pub. Empl. Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992).
¶ 12 In so doing, we give effect to the Legislature's intent in promulgating the statute. Washington's Industrial Insurance Act "is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker." Dennis v. Dep't of Labor & Indus., 109 Wash.2d 467, 470, 745 P.2d 1295 (1987).
¶ 13 We begin our review with the statute's plain language. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995). Where a statute is unambiguous, as here, we determine legislative intent from the statutory language alone. Waste Mgmt. of Seattle, Inc. v. Util. & Transp. Comm'n, 123 Wash.2d 621, 629, 869 P.2d 1034 (1994).

II. RCW 51.32.080(4)
¶ 14 The Department challenges the trial court's ruling that it could not deduct from Jacobsen's pension the temporary total disability compensation ("time loss") it had already paid him because RCW 51.32.080(4) does not expressly mention temporary total disability (TTD or "time loss") in calculating such a deduction. The Department argues that (1) permanent partial disability (PPD) pension compensation and time loss compensation (TTD) are both "total disability" compensation,[6] and (2) it must avoid overlapping *256 total disability benefits by excluding those periods in which the worker actually received time loss from the "first instance"[7] calculation in RCW 51.32.080(4) forward. We disagree.
¶ 15 RCW 51.32.080(4) requires:
If permanent partial disability compensation is followed by permanent total disability compensation, any portion of the permanent partial disability compensation which exceeds the amount that would have been paid the injured worker if permanent total disability compensation had been paid in the first instance, shall be deducted from the pension reserve of such injured worker and his or her monthly compensation payments shall be reduced accordingly.
(Emphases added.) Our Supreme Court has held that this PPD deduction statute applies "in all cases where permanent partial disability compensation is followed by permanent total disability compensation." Stuckey v. Dep't of Labor & Indus., 129 Wash.2d 289, 299-300, 916 P.2d 399 (1996) (emphases added).
¶ 16 The purpose of this PPD deduction statute, RCW 51.32.080(4), is to "ensure that injured workers who first receive permanent partial disability awards and later receive total disability pensions do not receive greater benefits than workers who endure permanent total disabilities in the first instance." Stuckey, 129 Wash.2d at 296, 916 P.2d 399 (emphases added).
¶ 17 The Department relies on Harrington v. Dep't of Labor & Indus., 9 Wash.2d 1, 113 P.2d 518 (1941). But Harrington does not apply here. Harrington was permanently totally disabled in the first instance, for which he received a lump sum settlement from his pension reserve. 9 Wash.2d at 2-3, 113 P.2d 518. In rejecting Harrington's new unrelated claim for additional time loss compensation, after he returned to work and was injured again, the Court held, "Having been classified as permanently and totally disabled, [the worker] could not, in law, be further disabled." Harrington, 9 Wash.2d at 7, 113 P.2d 518 (emphasis added). The Court reasoned that Harrington had "already received the highest disability rating known to the law, and upon that rating had been granted the highest compensation allowable under the workmen's compensation act." Harrington, 9 Wash.2d at 7, 113 P.2d 518. Accordingly, in disallowing additional time loss benefits for the new injury, the Court held that "[a] subsequent lesser disability cannot be superimposed upon the maximum disability recognized by the law." Harrington, 9 Wash.2d at 8, 113 P.2d 518.[8]
¶ 18 Here, however, Jacobsen did not similarly seek additional payment for either a new injury or for a subsequent, lesser disability superimposed on and following payment for the maximum disability recognized by law. Rather, his original injury resulted in only temporary disability in the "first instance," for which he received temporary time loss compensation, in contrast to Harrington's permanent disability, for which he received permanent compensation in the first instance. Unlike the facts in Harrington, it was not until many years later, after Jacobsen's condition aggravated, that the Department finally adjudicated him permanently and totally disabled and attempted to adjust his pension compensation. We decline the Department's request to stretch the reasoning of Harrington, which is factually distinguishable, to resolve an issue for which the plain language of RCW 51.32.080(4) is clearly dispositive
¶ 19 We agree with the trial court that RCW 51.32.080(4) is not ambiguous. The statute provides only that any permanent partial disability (PPD), in excess of the amount of permanent total disability (PTD) that would have been paid to the worker if *257 PTD had been paid in the first instance, must be deducted from the worker's pension reserve. RCW 51.32.080(4).
Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusio alteriusspecific inclusions exclude implication.
Wash. Natural Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 77 Wash.2d 94, 98, 459 P.2d 633 (1969). Applying this principle here, we note that RCW 51.32.080(4) does not mention time loss compensation for temporary disability when calculating a worker's pension reserve deduction. We conclude, therefore, that in promulgating RCW 51.32.080(4), the Legislature intentionally omitted a deduction for time loss payments. And we decline the Department's invitation to thwart the Legislature's intent by reading such a deduction into the statute.[9]

III. ATTORNEY FEES
¶ 20 Jacobsen requests attorney fees under RCW 51.52.130, which entitles a worker to attorney fees where the worker's right to relief is sustained in an appeal by the department or employer. In his response to the Department's Motion for Reconsideration, Jacobsen requests that we award attorney fees incurred in filing his response. Having sustained Jacobsen's right to relief, we award him reasonable attorney fees under this statute. RAP 18.1.[10]
¶ 21 Affirmed.
We concur: QUINN-BRINTNALL, C.J., and VAN DEREN, J.
NOTES
[1] "Time loss" is workmen's compensation parlance for temporary total disability (TTD) compensation, a wage replacement benefit paid under RCW 51.32.090. See WAC XXX-XX-XXXX.
[2] Time loss payments are conditioned on cooperation with the Department rehabilitation and training efforts. RCW 51.32.110(2).
[3] The record shows that Jacobsen's time loss payments ceased only during the period from October 4, 1990, to October 24, 1991, when the Department closed his claim with a PPD award. The Department resumed Jacobsen's time loss payments when he filed an aggravation claim. The Department stopped Jacobsen's time loss payments when it adjudicated him to be permanently totally disabled, gave him a pension award, and again closed his claim. The record does not indicate the amount of time loss the Department paid Jacobsen during these intervals.
[4] Such a claim may be reopened for any of a number of benefits including temporary total disability (time loss), permanent total disability, permanent partial disability, or treatment. RCW 51.32.160.
[5] The Department concedes that the correct date of "first instance," i.e. the first permanent partial disability payment to Jacobsen for this particular injury, was November 25, 1987, not October 4, 1990. Here, "first instance," though not statutorily defined, is the first date the Department closed Jacobsen's claim and made a permanent partial disability award.

Initial time loss payments are not factored into the date of "first instance." Jacobsen received time loss payments dating back to 1980. His first permanent partial disability determination, however, was November 25, 1987 (i.e., first closing of the claim), the date of the "first instance."
Although the Department subsequently reopened and closed Jacobsen's claim two more times, the Department returns to the first adjudication of permanent partial disability to take into account all prior permanent partial disability payments in calculating Jacobsen's pension deduction.
[6] PPD "means the loss of either one foot, one leg, one hand, one arm, one eye, one or more fingers, one or more toes, any dislocation where ligaments were severed where repair is not complete, or any other injury known in surgery to be permanent partial disability." RCW 51.08.150 (emphasis added). PTD "means loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation." RCW 51.08.160 (emphasis added).

Temporary total disability is defined in WAC 296-20-01002, which provides: "Total temporary disability: Full-time loss compensation will be paid when the worker is unable to return to any type of reasonably continuous gainful employment as a direct result of an accepted industrial injury or exposure." Temporary total disability (time loss) and PTD compensation are wage-replacement benefits. WAC XXX-XX-XXXX. See also RCW 51.32.090.
[7] See n. 4 for explanation of "first instance."
[8] In Sorenson v. Dep't of Labor & Indus., 19 Wash.2d 571, 577-78, 143 P.2d 844 (1943), the Supreme Court again held that a worker classified as permanently totally disabled who had received a lump sum pension settlement could not subsequently receive additional compensation for further injuries suffered during extra hazardous employment.
[9] Furthermore, in stark contrast to the omission of time loss from RCW 51.32.080(4), the Legislature specifically mentions time loss compensation in the next section, RCW 51.32.090. Such juxtaposition underscores the Legislature's clear distinction between temporary and permanent disability payments and provides a further reason for us to decline to read into RCW 51.32.080(4) an unexpressed legislative intent to include loss compensation in the pension deduction calculation. It is for the Legislature, not the Department or the courts, to amend the statute to include time loss compensation in the pension deduction calculation if warranted.
[10] In his brief, Jacobsen states that if we find RCW 51.52.130 applicable, he will file an affidavit to identify attorney time spent on this appeal. RAP 18.1(d).