[No. 33588-3-II.   Division Two.   December 19, 2006.]

ROBISON CONSTRUCTION, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Aaron K. Owada* (of *Law Offices of Aaron K. Owada and AMS Consulting*), for appellant.

*Robert M. McKenna, Attorney General,* and *Bourtai B. Hargrove, Assistant,* for respondent.

¶1 ARMSTRONG, J. — Robison Construction, Inc., appeals a Board of Industrial Insurance Appeals (Board) decision that Robison committed a repeat serious violation of WAC 296--155-655(10)(b) because it failed to keep a front-end loader at least 24 inches from an excavation site. Robison argues that (1) the regulation required Robison to keep only the weight-bearing portion of the loader's tire 24 inches from the excavation site and (2) substantial evidence did not support the Board's findings that the front-end loader rested less than 24 inches from the excavation and that Robison had knowledge of the hazard. We affirm.

## FACTS

¶2 On a rainy, muddy day, Robison foreman Gordon Brantley worked inside an earthen trench on a construction site. Bill McCoy drove a 26,000-pound front-end loader,

hauling approximately 5,000 pounds of wet sand to dump in the trench. Brantley directed McCoy toward the trench with hand signals, then, when the front-end loader neared the trench's edge, he signaled McCoy to shake the sand out of the loader. McCoy did so, then set the machine in reverse. But the front tires slipped in the mud, spun, and the front-end loader suddenly slid into the trench, pinning Brantley to the trench's side wall. Brantley later died of abdominal injuries.

¶3 Edward Whitney, a Department of Labor and Industries (Department) WISHA[1] compliance officer, arrived on the scene less than an hour later. He took photographs and measurements. He found that the sides of the trench were sloped, but that Robison had not stabilized the trench's edge. Whitney also observed that a small amount of soil had fallen into the trench along with the front-end loader. He concluded that the trench wall had not failed because, if it had, two or three wheelbarrow loads of soil would have fallen into the trench.

¶4 Based on his inspection of the front-end loader, trench, and tire tracks, Whitney drew a diagram showing the likely position of the loader's front tires just before the accident. According to the diagram, when the front of the left tire was 24 inches from the trench's edge, the front of the right tire would lie flush with the trench's edge or would overhang the edge.

¶5 Whitney learned from witnesses that Robison had held a safety meeting the morning of the accident, discussing the rain and slippery mud on the site. Whitney learned that Brantley was the "competent person"[2] on the job but that his co-workers did not know if he or anyone else had inspected the trench that morning. Certified Appeal Bd. R. (CABR) (Dec. 2, 2003) at 7. In follow-up interviews, McCoy, the driver, and Bradley Currier, a witness, said that the

---

[1] Washington Industrial Safety and Health Act of 1973, ch. 49.17 RCW.

[2] A "competent person" is a person who is capable of identifying workplace hazards and is authorized to promptly eliminate those hazards. WAC 296-155-012.

front edge of the tires came within 6-to-12 inches of the trench's edge immediately before the accident.

¶6 The Department cited Robison, alleging in violation 1-1a that Robison committed a repeat serious violation of WAC 296-155-655(10)(b)[3] because it failed to ensure that the front-end loader remained at least 24 inches from the excavation's edge.[4] The Department charged a repeat violation because Robison has violated the same WAC two years earlier. The Department assessed an $11,700 penalty.

¶7 Robison appealed the citation to the Board. He argued that the front-end loader remained further than 24 inches from the trench's edge but that a section of the trench wall had failed. After an evidentiary hearing, the Board issued a proposed decision and order affirming violation 1-1a and issued the following finding of fact:

> [O]n November 6, 2002, [Robison] failed to ensure that employees were protected from a front-end loader rolling into an excavation by not keeping the front-end loader at least 24 inches from the edge of the excavation. No retaining devices were used to prevent the front-end loader from falling or rolling into the excavation.

CABR at 50. The Board also found that because the inspectors found little soil in the trench, the wall did not fail. Robison petitioned for Board review. The Board denied the petition and issued its final decision and order.

¶8 Robison appealed to the Pierce County Superior Court. Robison argued, in part, that the Board erred because the Department presented no evidence that the *weight-bearing* portion of the front-end loader's tire came

---

[3] WAC 296-155-655(10)(b) reads:

Employees shall be protected from excavated or other materials or equipment that could pose a hazard by falling or rolling into excavations. Protection shall be provided by *placing and keeping* such materials or equipment *at least 2 feet (.61 m) from the edge of excavations*, or by the use of retaining devices that are sufficient to prevent materials or equipment from falling or rolling into excavations, or by a combination of both if necessary.

(Emphasis added.)

[4] The Department also cited Robison for three other violations, but the Board dismissed those and the parties do not contest them in this appeal.

within 24 inches of the trench's edge. The court affirmed the Board's decision, finding: "WAC 296-155-655(10)(b) requires the front-end loader to be kept more than two feet from the edge of the excavation and not just the weight-bearing portion of the tire." Clerk's Papers (CP) at 47. Robison timely appealed to this court.

## ANALYSIS

### I. Standard of Review

¶9 Because Robison's underlying claim is against the Department, we review the Board's decision and not the superior court's ruling. *Dep't of Labor & Indus. v. Denny*, 93 Wn. App. 547, 550, 969 P.2d 525 (1999). We review an administrative decision based upon the agency record, not upon the trial court record. *Denny*, 93 Wn. App. at 550 (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982)). And we review an agency's legal determinations under an error of law standard, which permits us to substitute our judgment for that of the agency. *Denny*, 93 Wn. App. at 550. We treat the Board's interpretation of a regulation as a legal conclusion. *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991) (citing *St. Francis Extended Health Care v. Dep't of Soc. & Health Servs.*, 115 Wn.2d 690, 695, 801 P.2d 212 (1990)). But we accord substantial weight to the agency's legal interpretation if it falls within the agency's expertise in a special area of law. *Denny*, 93 Wn. App. at 550 (citing *Macey v. Dep't of Employment Sec.*, 110 Wn.2d 308, 313, 752 P.2d 372 (1988)).

### II. Regulatory Interpretation

¶10 Robison argues that the Board and the superior court misinterpreted "placing and keeping equipment and material at least 24 inches away from the edge of the excavation" in WAC 296-155-655(10)(b). Br. of Appellant at 23-24. Robison reasons that this phrase refers to the

weight-bearing portion of heavy machinery, in this case the part of the front-end loader's tire that touched the ground. This argument fails.

¶11 The legislature enacted WISHA and authorized regulations under it to assure safe working conditions for Washington workers. RCW 49.17.010. We liberally construe WISHA and its regulations to carry out this purpose. *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 336, 24 P.3d 424 (2001).

¶12 Robison argues that only the weight-bearing portion of a front-end loader's tire must be kept 24 inches from the edge of excavation. The regulation itself contains no such restrictive language. WAC 296-155-655(10)(b). Robison argues, however, that the verbs "placing" and "keeping" somehow evoke the weight-bearing portion of equipment. Br. of Appellant at 23. Robison cites no authority for this proposition and we can find none.

¶13 The industrial appeals judge specifically rejected Robison's argument, stating that she "was not persuaded by the . . . testimony . . . differentiating between the parts of the tire that [are] in contact with the [ground] versus the part that was not in contact with the ground." CABR (June 28, 2004) at 46. And the superior court adopted this interpretation, stating that the regulation "requires the front-end loader to be kept more than two feet from the edge of the excavation and not just the weight-bearing portion of the tire." CP at 47. More importantly, Robison's interpretation contradicts the legislature's intent by allowing heavy machinery closer to an excavation, thus increasing the chance that soil, loose rock, or machinery will fall into the excavation and injure a worker.

¶14 Second, Robison argues that, if this court rejects its interpretation, an employer could never use heavy equipment to dig a trench because the bucket could not come within 24 inches of the excavation's edge. The Board, however, apparently interprets section 655(10)(b) as requiring the employer to keep any part of the *tire* at least 24 inches from the edge of an excavation. Such an interpreta-

tion is reasonable because the risk of slipping into the trench arises from the tires, not the bucket. Moreover, if an employer cannot comply with the tire distance rule, it can place retaining devices to protect its employees in the trench. WAC 296-155-655(10)(b). In short, we find the Board's interpretation of section 655(10)(b) reasonable and consistent with the legislature's intent to promote workplace safety.

¶15 Affirmed.

¶16 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J., concurs.

¶17 PENOYAR, J. (concurring) — I respectfully disagree with an interpretation of WAC 296-155-655(10)(b) that requires an employer to keep the *front* edge of the tire at least 24 inches from the trench because that interpretation is not reasonable. The *footprint* of the tire is what is relevant to safety, not the front edge of the tire in the air above the ground. If a loader is placed parallel to a trench, the tire footprint and the front edge of the tires are equidistant to the trench. Therefore, under the majority's reasoning, a contractor could place weight, and thus danger, closer to a trench by orienting the equipment differently. Another problem with the majority's interpretation is that the distance that weight would be from a trench would vary with the diameter of the tire and the diameter may, or may not, reflect the weight the tire is carrying. Thirdly, it is more difficult to determine when the front edge of a tire is within 24 inches of a trench than when a tire's footprint is within 24 inches. Contractors need a rule that is easy to understand and apply and that promotes safety. Therefore, I disagree with the majority's interpretation of the rule.

¶18 Although I would interpret section 655(10)(b) differently, I agree with the result the majority reaches. Substantial evidence supports the finding that the wall did not collapse. Therefore, the front-end loader was accidentally allowed to fall into the excavation, and the loader was placed within 24 inches of the excavation wall by any measure.