[No. 26628-1-III.    Division Three.    January 29, 2009.]

ENERGY NORTHWEST, *Appellant*, v. CAROLYN S. HARTJE ET AL., *Respondents*.

456

*Gilbert M. Stratton* and *Marne J. Horstman* (of *Craig Jessup & Stratton, PLLC*), for appellant.

*Robert M. McKenna, Attorney General,* and *John R. Wasberg, Assistant*; and *Ray R. Whitlow,* for respondents.

¶1 BROWN, J. — Energy Northwest appeals a workers' compensation award to Carolyn S. Hartje by the Department of Labor and Industries (Department). On June 24, 1997, Ms. Hartje's initial claim was closed, with Energy directed to pay time loss compensation and a permanent partial disability award. The Department found Ms. Hartje employable as of October 2, 1996. Ms. Hartje unsuccessfully appealed the closing of her claim to the Board of Industrial Insurance Appeals (Board). Although Ms. Hartje stipulated to dismiss her subsequent superior court appeal with prejudice, the Department allowed Ms. Hartje to reopen her claim and ordered Energy to pay her time loss compensation from the date her claim was reopened; the Board and the superior court affirmed. We reverse because we agree with Energy that, considering the procedural history, Ms. Hartje had voluntarily retired under *Weyerhaeuser Co. v.*

*Farr*, 70 Wn. App. 759, 855 P.2d 711 (1993) and is precluded as a matter of law from asserting her present claims.

## FACTS

¶2 Most facts are unchallenged, and therefore, they are verities on appeal. *See Roller v. Dep't of Labor & Indus.*, 128 Wn. App. 922, 927, 117 P.3d 385 (2005) ("unchallenged facts of an agency's final decision are verities on appeal").

¶3 In 1982, Energy's predecessor, Washington Public Power and Supply System, hired Ms. Hartje as a secretary, but she later became a file clerk, a position requiring frequent standing, walking, bending, and stooping. On March 13, 1994, Ms. Hartje injured her back while employed by Energy.

¶4 On April 19, 1994, Ms. Hartje applied for Department benefits. The Department allowed her claim on May 5, 1994. On June 24, 1997, the Department issued an order and notice closing Ms. Hartje's claim and directing Energy to pay time loss compensation for September 21, 1996 through October 2, 1996, and a permanent partial disability award. Specifically, this order and notice stated:

> [Energy] IS DIRECTED TO PAY TIME LOSS BENEFITS FOR THE PERIOD OF 9/21/96 THROUGH 10/02/96, DATE CLAIMANT FOUND EMPLOYABLE. [The Department] IS CLOSING THIS CLAIM BECAUSE THE COVERED MEDICAL CONDITION(S) IS STABLE. [Energy] IS DIRECTED TO PAY YOU A PERMANENT PARTIAL DISABILITY AWARD OF:
>
> CATEGORY 3 (WAC 296-20-280) PERMANENT DORSO-LUMBAR AND/OR LUMBOSACRAL IMPAIRMENTS.

Clerk's Papers (CP) at 308.

¶5 Ms. Hartje unsuccessfully appealed the June 24, 1997 order and notice to the Board. The Board's March 22, 1999 decision and order partly found:

> During the period from October 2, 1996 through June 24, 1997, the industrial injury of March 13, 1994, did not impose any limitations that prevented [Ms. Hartje] from sedentary work as

a warehouse clerk for six and one-half hours in an eight hour work day which required word processing and sitting up to one-half hour at a time, and occasionally walking and reaching and carrying up to one to two pounds, and rarely stooping, kneeling pushing [sic], pulling, bending, and twisting . . . . From October 2, 1996 through June 24, 1997, [Ms. Hartje] was capable of obtaining and performing gainful employment on a reasonably continuous basis when considering [her] age, education, work experience and the residual effects of the industrial injury of March 13, 1994.

CP at 314-15.

¶6 Further, the decision and order partly concluded:

The claimant was not a totally, temporarily disabled worker from October 2, 1996 through June 27, 1997, inclusive, due to the residual effects of an industrial injury of March 13, 1994, as contemplated by RCW 51.32.090.

CP at 315. In January 2000, Ms. Hartje stipulated to dismiss with prejudice her April 1999 superior court appeal of the Board's decision and order.

¶7 Meanwhile, on March 16, 1999, Ms. Hartje applied to reopen her claim with the Department, alleging an aggravation or worsening of her condition. The Department reopened her claim as of February 10, 1999, specifying that it was reopened "FOR AUTHORIZED TREATMENT AND ACTION AS INDICATED." CP at 464. Energy unsuccessfully appealed the reopening to the Board and the Benton County Superior Court.

¶8 On October 6, 2004, the Department issued an order and notice directing Energy to pay Ms. Hartje time loss compensation from February 1, 1999, the date her claim was reopened, through the October 6, 2004 order and notice date. Energy's appeal of this order to the Board eventually led to a September 2005 hearing before an industrial appeals judge (IAJ).

¶9 The IAJ considered evidence from Ms. Hartje, and Karen L. Romine and James R. Romine, lay witnesses familiar with Ms. Hartje. Ms. Hartje related she was employed

at Energy through the mid-1990s, but she did not work from February 10, 1999 to October 6, 2004. Ms. Hartje testified that she never retired from Energy.

¶10 The IAJ considered parts of Ms. Hartje's deposition and that of J. Daniel Vaughn, MD, who had treated Ms. Hartje's back problems since 1999. Ms. Hartje deposed that she had not looked for work since October 1996 and had not looked for work since she left Energy. Ms. Hartje acknowledged receiving a letter (exhibit 5) from Energy informing her she would be terminated if she did not return to work by July 7, 1996. She testified she did not return to work by that date.

¶11 In Ms. Hartje's June 30, 2004 declaration, she partly declared:

At no time have I been asked to take a retirement through my employer at the time of injury;

[ ] After my on-the-job injury, I attempted to return to work on two occasions and retained ties with my employer;

[ ] I have not been able to return to work since the 1996 time frame due to the residuals from my industrial injury. I have not voluntarily withdrawn from the work force at any time.

[ ] Had I been able to return to work, I would have done so. It has always been my intent to return to work, if possible.

CP at 475.

¶12 On May 31, 2006, the IAJ issued a proposed decision and order affirming the Department's December 7, 2004 order and notice affirming the October 6, 2004 order and notice that directed Energy to pay time loss compensation to Ms. Hartje from February 1, 1999 to October 6, 2004. The IAJ partly found:

As the result of the condition her industrial injury proximately caused, Ms. Hartje underwent three laminectomy[1] surgeries prior to June 24, 1997.

[ ] Ms. Hartje was capable of obtaining and performing a form of gainful occupation on a reasonably continuous basis as of June 24, 1997.

---

[1] A "laminectomy" is an "[e]xcision of a vertebral posterior arch." TABER'S CYCLO-PEDIC MEDICAL DICTIONARY 1076 (17th ed. 1993).

[ ] On July 25, 2001, the Department reopened Ms. Hartje's claim for benefits, effective February 10, 1999. Thereafter, the claimant underwent spinal fusion surgery for the condition her industrial injury proximately caused.

[ ] At some time after 1994, Ms. Hartje was diagnosed as having ischemic gliosis[2] but the evidence did not establish that the condition was disabling.

[ ] In view of her age, work experience and the effects of her March 13, 1994 industrial injury, from February 10, 1999, through October 6, 2004, Ms. Hartje was unable to obtain or perform any form of gainful occupation on a reasonably continuous basis.

CP at 302.

¶13 The IAJ partly concluded, "From February 10, 1999, through October 6, 2004, Ms. Hartje was temporarily totally disabled as that term is used in RCW 51.32.090 as the result of conditions proximately caused by her March 13, 1994 industrial injury." CP at 302. Additionally, based on Ms. Hartje's testimony that she did not retire from Energy, the IAJ found, "Based on the record, a conclusion is warranted that Ms. Hartje did not retire within the meaning of RCW 51.32.090(8)." CP at 299.

¶14 Although Energy petitioned the Board for review, the Board accepted the IAJ's proposed decision and order as its final decision. Energy then unsuccessfully appealed to the superior court. The superior court denied reconsideration, and we now consider Energy's appeal.

ANALYSIS

Effect of Prior Orders

¶15 The issue is whether, considering the procedural history, the Board erred as a matter of law in awarding additional time loss compensation to Ms. Hartje for her

---

[2] According to Dr. Vaughn, "Ischemic gliosis is usually an incidental finding on an image of the brain. It means that there have [sic] been some impairment of the small blood vessels to the far outside of the brain." CP at 553.

March 13, 1994 industrial injury. Energy first contends the doctrines of claim preclusion, issue preclusion, and law of the case bars Ms. Hartje from seeking additional time loss compensation. Second, Energy contends Ms. Hartje is barred from receiving additional time loss compensation because she "voluntarily retired" from the work force within the meaning of RCW 51.32.090(8).

¶16 In reviewing administrative board rulings, we stand in the same position as the superior court. *Dep't of Labor & Indus. v. Tyson Foods, Inc.*, 143 Wn. App. 576, 581-82, 178 P.3d 1070 (2008) (citing *Farm Supply Distribs., Inc. v. Wash. Utils. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974)). Where the underlying challenge is to the Department's order, we review the Board's decision, not the superior court's ruling. *Robison Constr., Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 369, 373, 149 P.3d 424 (2006) (citing *Dep't of Labor & Indus. v. Denny*, 93 Wn. App. 547, 550, 969 P.2d 525 (1999)). An agency's legal determinations are reviewed under an error of law standard, "which permits us to substitute our judgment for that of the agency." *Id.* (citing *Denny*, 93 Wn. App. at 550). Additionally, "unchallenged facts of an agency's final decision are verities on appeal." *Roller*, 128 Wn. App. at 927.

¶17 " 'Time loss' is workmen's compensation parlance for temporary total disability . . . compensation, a wage replacement benefit paid under RCW 51.32.090." *Jacobsen v. Dep't of Labor & Indus.*, 127 Wn. App. 384, 386 n.1, 110 P.3d 253 (2005). " 'Temporary total disability' is a condition that temporarily incapacitates a worker from performing any work at any gainful employment." *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000).

¶18 1. Claim Preclusion, Issue Preclusion, and Law of the Case. Energy first contends the claim preclusion doctrine bars Ms. Hartje from claiming additional time loss compensation because she failed to appeal the Board's March 22, 1999 decision. Key is the conclusion that she was not a totally, temporarily disabled worker from October 2, 1996 through June 24, 1997. Energy argues Ms. Hartje has

already been afforded the opportunity to litigate her entitlement to additional time loss compensation.

¶19 Res judicata, or claim preclusion, bars a plaintiff "from litigating claims that either were, or should have been, litigated in a former action." *Kuhlman v. Thomas*, 78 Wn. App. 115, 120, 897 P.2d 365 (1995). The doctrine applies where "the moving party proves a concurrence of identity between the two actions in four respects: (1) persons and parties; (2) cause of action; (3) subject matter; and (4) the quality of the persons for or against whom the claim is made." *Id.* Further, in determining if a concurrence of identity exists between the causes of action, the following should be considered:

> "(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Id.* at 122 (alteration in original) (quoting *Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983)).

¶20 The parties in both claims are the same (Energy and Ms. Hartje), and the subject matter in both claims is the same (the extent of Ms. Hartje's March 13, 1994 industrial injury). However, there is no identity in the cause of action. After the March 22, 1999 Board decision, Ms. Hartje's claim was reopened based upon aggravation of her condition. The evidence presented in the current claim concerned Ms. Hartje's injury and ability to work after her injury became aggravated, while the evidence presented in the March 22, 1999 Board decision concerned her injury and ability to work before the aggravation of her injury. Accordingly, claim preclusion does not apply.

¶21 Next, Energy argues the issue preclusion doctrine bars Ms. Hartje from claiming additional time loss compensation because her entitlement to additional time loss compensation was litigated in the March 22, 1999

Board decision. Collateral estoppel, or issue preclusion, applies solely to "issues actually litigated and necessarily determined." *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987). The issue preclusion elements are

"(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

*Id.* (quoting *Malland v. Dep't of Ret. Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985)).

¶22 Here, the current claim concerned Ms. Hartje's injury and ability to work after her injury became aggravated, while the evidence presented in the March 22, 1999 Board decision concerned her injury and ability to work before the aggravation of her injury. Thus, the issues are not identical. Therefore, issue preclusion does not apply.

¶23 Finally, we consider Energy's law of the case arguments. "An unchallenged conclusion of law becomes the law of the case." *King Aircraft Sales, Inc. v. Lane*, 68 Wn. App. 706, 716, 846 P.2d 550 (1993).

¶24 In its March 22, 1999 decision, the Board concluded Ms. Hartje "was not a totally, temporarily disabled worker from October 2, 1996 through June 24, 1997." CP at 315. Ms. Hartje's superior court appeal of the decision was dismissed with prejudice by stipulation. Thus, the Board's conclusion of law is the law of the case. Even so, this conclusion does not prevent Ms. Hartje from asserting entitlement to additional time loss compensation after her claim was reopened for aggravation. *See Hubbard*, 140 Wn.2d at 37 n.1 (stating "[w]hen a worker's injury becomes aggravated and his or her claim is 'reopened' pursuant to RCW 51.32.160, the worker is reclassified as temporarily disabled until either the disability terminates, in which case disability payments cease, or the worker again reaches a static impaired condition and the claim is reclosed"). Accordingly, Energy's law of the case argument fails.

¶25 2. "Voluntarily Retired." Energy contends Ms. Hartje is barred from receiving additional time loss compensation because she "voluntarily retired" from the work force under RCW 51.32.090(8). Energy argues under *Farr*, 70 Wn. App. 759, Ms. Hartje's departure from the work force constituted voluntary retirement. We agree.

¶26 "The ultimate goal [of time loss compensation] is to provide temporary financial support until the injured worker is able to return to work." *Kaiser Aluminum & Chem. Corp. v. Overdorff*, 57 Wn. App. 291, 296, 788 P.2d 8 (1990). A worker who is voluntarily retired is not eligible for time loss compensation. RCW 51.32.090(8). A worker not actively engaged in the work force due to retirement "lack[s] the requisite adverse economic impact, *i.e.*, lost wages or income, to warrant the award of time loss benefits." *Overdorff*, 57 Wn. App. at 296. A worker is considered "voluntary retired" if "[(1) t]he worker is not receiving income, salary or wages from any gainful employment; and [(2) t]he worker has provided no evidence to show a bonafide [sic] attempt to return to work after retirement." WAC 296-14-100(1).

¶27 In *Farr*, Adelbert Farr injured his back while working for Weyerhaeuser on June 15, 1976. *Farr*, 70 Wn. App. at 760. The Department allowed his claim and, on October 1978, closed the claim after granting time loss compensation and a permanent partial disability award. *Id.* at 761. Later, Mr. Farr's claim was reopened based on aggravation and, on July 25, 1980, closed for a second time after additional payment for time loss compensation and a permanent partial disability award. *Id.* In July 1980, Mr. Farr retired and did not seek other employment. *Id.*

¶28 On July 24, 1985, Mr. Farr again applied to reopen his claim based on aggravation. *Id.* After the Department granted his request and closed his claim with an additional permanent partial disability award, Mr. Farr appealed the Board's ruling, arguing he was permanently and totally disabled and therefore entitled to a pension. *Id.* The Board

reversed the Department, directing that Mr. Farr be placed on the pension rolls. *Id.* On review of the Board's decision, the superior court granted summary judgment for Weyerhaeuser, concluding Mr. Farr was voluntarily retired and therefore ineligible for permanent disability benefits. *Id.* at 762.

¶29 The appellate court affirmed the superior court's decision favoring the employer, concluding that Mr. Farr voluntarily withdrew from the work force.[3] *Id.* at 762-67. The court held "under Washington law, a person who voluntarily withdraws from the work force and subsequently becomes totally disabled is not entitled to permanent total disability benefits." *Id.* at 765. The court reasoned "that permanent total disability benefits under RCW 51.32 are intended as a replacement for lost income, and that a person who is voluntarily withdrawn from the work force is no longer a 'worker' as defined in the statute." *Id.* The court further found Mr. Farr "is precluded from arguing . . . he could not have reentered the work force in some capacity following his retirement." *Id.* at 766. Specifically, the Department's finding that as of July 25, 1980, Mr. Farr was only partially disabled "is res judicata as to his condition at that point." *Id.* The court stated:

> Although [Mr.] Farr's condition may have worsened in the 5 years between his retirement in 1980 and his application to reopen his claim, there is no evidence showing that [Mr.] Farr wanted to engage in some form of gainful employment during this period but was physically unable to obtain any employment.

*Id.*

---

[3] *Farr* was not decided under the statutory provision providing that a worker who is voluntarily retired is not eligible for permanent total disability compensation. *See Farr*, 70 Wn. App. at 762; *see also* RCW 51.32.060(6). The statutory provisions providing that workers who are voluntarily retired are not eligible for either permanent total disability compensation or temporary total disability compensation were enacted in 1986. *See* LAWS OF 1986, ch. 58, § 5 (adding what is now RCW 51.32.060(6)); LAWS OF 1986, ch. 59, §§ 2, 3 (adding what is now RCW 51.32.090(8)).

¶30 The court acknowledged its decision is equally applicable in cases involving temporary total disability, as opposed to permanent total disability. *Id.* at 762-64; *see also Overdorff*, 57 Wn. App. at 293-97 (voluntarily retired worker was not entitled to time loss compensation).

¶31 Here, Ms. Hartje was injured on March 13, 1994. Her claim was closed on June 24, 1997, after she received time loss compensation through October 2, 1996, and a permanent partial disability award. On July 7, 1996, Ms. Hartje's employment with Energy was terminated. In her deposition, Ms. Hartje testified she had not looked for work since she left Energy. On March 16, 1999, Ms. Hartje applied to reopen her claim based upon aggravation.

¶32 As in *Farr*, Ms. Hartje voluntarily withdrew from the work force prior to the reopening of her claim based upon aggravation. *See Farr*, 70 Wn. App. at 766-67. Although she was terminated from Energy, she was subsequently found to be permanently partially disabled and, thus, capable of obtaining gainful employment as of October 2, 1996, but she did not.

¶33 Ms. Hartje argues the record shows she never intended to retire and intended to return to the work force. However, a worker is considered "voluntarily retired" if, in addition to "not receiving any income, salary or wages from any gainful employment[,] . . . [t]he worker has provided no evidence to show a bonafide [sic] attempt to return to work after retirement." WAC 296-14-100(1)(a), (b). By itself, Ms. Hartje's intent to return to the work force after her voluntary departure from the work force does not constitute a bona fide attempt.

¶34 Ms. Hartje argues she was not voluntarily retired because she was not able to return to the work force due to her industrial injury. "A worker is not voluntarily retired when the industrial injury or occupational disease is a proximate cause for the retirement." WAC 296-14-100(2). " 'Proximate cause includes two elements: cause in fact and legal causation.' " *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180 (2008) (quoting *Baughn v. Honda*

*Motor Co.*, 107 Wn.2d 127, 142, 727 P.2d 655 (1986)). " 'Cause in fact concerns "but for" causation, events the act produced in a direct unbroken sequence which would not have resulted had the act not occurred.' " *Id.* (quoting *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999)). Thus, Ms. Hartje must show her voluntary retirement would not have resulted if her industrial injury had not occurred. This she fails to do.

¶35 After Ms. Hartje left the work force, she was determined on June 24, 1997 to be permanently partially disabled. This determination is res judicata as to her condition at that time. *Farr*, 70 Wn. App. at 766. Further, because it was determined that Ms. Hartje was capable of obtaining gainful employment as of October 2, 1996, her industrial injury was not a proximate cause for her failure to return to the work force.

¶36 The ultimate goal of the Industrial Insurance Act, Title 51 RCW, is "to provide temporary financial support until the injured worker is able to return to work. This goal cannot come to fruition when a worker voluntarily removes himself from the active labor force and opts, despite the presence of sufficient physical capacities, to decline further employment." *Overdorff*, 57 Wn. App. at 296. Ms. Hartje "lack[s] the requisite adverse economic impact, *i.e.*, lost wages or income, to warrant an award of time loss benefits." *Id.*

¶37 Because Ms. Hartje was "voluntarily retired" from the work force within the meaning of RCW 51.32.090(8), the Board erred as a matter of law in awarding her additional time loss compensation.

¶38 Because the Board erred as a matter of law in awarding Ms. Hartje additional time loss compensation, we do not reach the contentions surrounding the alleged inadequacy of Dr. Vaughn's testimony on the subjects of Ms. Hartje's inability to work and if causation is sufficiently established to the industrial injury. Further, because Ms.

470

Hartje has not prevailed, we do not consider her arguments for attorney fees and costs.

¶39 Reversed.

Kulik, A.C.J., and Sweeney, J., concur.