FILED
COURT OF APPEALS
DIVISION II

2014 SEP -3 AM 3: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CAROLYN A. GIGER, Personal Representative of the Estate of ROBERT E. GIGER, deceased,<br><br>     Appellant,<br><br> v.<br><br>DEPARTMENT OF LABOR & INDUSTRIES; STATE OF WASHINGTON,<br><br>     Respondents. | No. 44508-5-II<br><br>UNPUBLISHED OPINION |

BJORGEN, A.C.J. — Carolyn Giger appeals from a summary judgment order dismissing her workers' compensation claim based on an injury to her deceased husband, Robert Giger.[1] The Board of Industrial Insurance Appeals (Board) had denied Robert's claim for temporary and permanent total disability benefits, arising out of the aggravation of a prior work-related injury, on the ground that Robert had voluntarily retired prior to the aggravation. Robert appealed to the superior court, and the Department of Labor and Industries (Department) moved for summary judgment, arguing that he had voluntarily retired as a matter of law prior to the aggravation, making him ineligible for the benefits sought. The superior court granted the Department's motion.

---

[1] We refer to the Gigers by their first names for clarity. We intend no disrespect.

Robert died while the motion was pending, and Carolyn Giger, as personal representative for his estate, appeals the grant of summary judgment in favor of the Department. She argues that material issues of fact remain as to whether Robert's industrial injury proximately caused his retirement and whether his failure to seek further employment was reasonable under the circumstances. Because resolution of these factual issues does not affect Robert's entitlement to the benefits he seeks, we affirm the Board's and the superior court's denial of Robert's claim.

FACTS

Robert sustained a back injury while employed as superintendent of the Larch Corrections Center in December 1985. Based on that injury, he filed a claim with the Department on January 9, 1986, which the Department closed the following April after awarding time loss compensation and medical benefits. The Department reopened the claim as of January 15, 1987. While the claim was still open, Robert retired from his job on April 1, 1988.

The Department closed Robert's claim again on November 8, 1990, after his doctor released him for full time employment, making a permanent partial disability award in addition to time loss compensation. Robert unsuccessfully appealed that decision to the Board, and then to the superior court, but did not pursue the matter further after the superior court affirmed the Board's decision and order. Even though Robert's doctor believed he was physically able to work, Robert remained retired. Robert acknowledged that he never sought gainful employment after 1988.

Robert was involved in motor vehicle accidents in 1992 and 1993, which he claimed aggravated his prior work related injury. For this reason, the Department reopened Robert's claim as of February 14, 1994, but awarded medical benefits only. In June 2010, the Department

2

denied Robert's request for total permanent disability benefits and for additional time loss compensation for the period from February 1994 to June 2010. After the Department declined to reconsider its decision, Robert appealed its order to the Board.

The Board assigned the case to an industrial appeals judge, who, after taking testimony and hearing argument, reversed the Department's order and remanded with instructions to pay Robert time loss compensation benefits from February 14, 1994 through June 25, 2010, and permanent total disability benefits thereafter. The Department petitioned the Board for review of the industrial appeals judge's proposed decision and order, and the Board reversed, affirming the Department's June 2010 decision denying Robert's claim and ordering Robert's claim to be closed.

Robert appealed the Board's decision and order to superior court, and the Department moved for summary judgment. After hearing argument from the parties, the superior court granted summary judgment to the Department, affirming the Board's decision and order. Carolyn appeals.

## ANALYSIS

Carolyn argues that because material issues of fact remain, the superior court erred in granting summary judgment to the Department. Specifically, Carolyn maintains that if the 1985 injury was a proximate cause of the decision for Robert to retire in 1988, and if a reasonable person in Robert's position would not have sought to rejoin the work force after the Department closed his claim in 1990, then he was not a voluntarily retired worker under the industrial insurance statute, Title 61 RCW, when the Department reopened his claim in 1994. Therefore, Carolyn argues, material issues of fact remain as to Robert's eligibility for the requested benefits,

3

No. 44508-5-II

and summary judgment was improperly granted to the Department. Concluding that resolution of these factual issues does not affect Robert's entitlement to time loss compensation or permanent total disability benefits, we affirm the superior court's grant of summary judgment.

## I. STANDARD OF REVIEW

The Industrial Insurance Act, Title 51 RCW, governs review of workers' compensation cases. Under the Act, we review the decision of the superior court in the same way as in other civil cases, rather than according to the judicial review provisions of the Administrative Procedure Act, chapter 34.05 RCW. *Mason v. Georgia-Pac. Corp.*, 166 Wn. App. 859, 863, 271 P.3d 381, *review denied*, 174 Wn.2d 1015 (2012) (citing RCW 51.52.140). On review of a summary judgment, we undertake the same inquiry as the superior court. *Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 353-54, 962 P.2d 844 (1998). A trial court should grant summary judgment only

> "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Romo*, 92 Wn. App. at 353-54 (quoting CR 56(c)). The party seeking summary judgment bears the burden of establishing its right to judgment as a matter of law, and the court must consider facts and reasonable inferences from the facts in favor of the nonmoving party. *Romo*, 92 Wn. App. at 354.

A.    Governing Law

"Time loss" benefits refer to "temporary total disability . . . compensation, a wage

4

replacement benefit paid under RCW 51.32.090." *Energy Nw. v. Hartje*, 148 Wn. App. 454, 463, 199 P.3d 1043 (2009) (quoting *Jacobsen v. Dep't of Labor & Indus.*, 127 Wn. App. 384, 386 n.1, 110 P.3d 253 (2005) (internal quotation marks omitted)). "Temporary total disability" means "a condition that temporarily incapacitates a worker from performing any work at any gainful employment." *Hartje*, 148 Wn. App. at 463 (quoting *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000) (internal quotation marks omitted)). "Permanent total disability" compensation, on the other hand, refers to benefits due to a worker who, as a result of an injury sustained in the course of his or her employment, suffers from a "condition permanently incapacitating the worker from performing any work at any gainful occupation." RCW 51.08.160; RCW 51.32.010; RCW 51.31.060.

We have categorized both temporary and permanent total disability compensation as "wage replacement" benefits because they serve to compensate injured workers for lost earnings. *Mason*, 166 Wn. App. at 867. In 1986, the legislature explicitly precluded voluntarily retired claimants from receiving such benefits. *Hartje*, 148 Wn. App. at 467 n.3 (citing LAWS OF 1986, ch. 58, § 5; ch. 59, §§ 2, 3, *recodified as* RCW 51.32.090(10)). WAC 296-14-100, also adopted in 1986, sets out the criteria for voluntary retirement, stating:

> (1) **What is voluntarily retired?** The worker is considered voluntarily retired if both of the following conditions are met:
> (a) The worker is not receiving income, salary or wages from any gainful employment; and
> (b) The worker has provided no evidence to show a bonafide attempt to return to work after retirement.
> Time-loss compensation is not paid to workers who voluntarily retired from the work force.
>
> . . . .
>
> (2) **When is a worker determined not to be voluntarily retired?** A worker is not voluntarily retired when the industrial injury or occupational disease is a proximate cause for the retirement.

5

The parties disagree as to whether these provisions apply in this case. Carolyn asserts they apply because Robert filed to reopen his claim in 1994, after the measures were enacted. The Department, on the other hand, contends that the provisions "are not directly applicable" because Robert's initial claim arose prior to enactment in 1986. Br. of Resp't at 12.

This disagreement, however, has no bearing on the proper resolution of this appeal. Because voluntarily retired persons do not qualify as "workers" under the Act and have no legitimate expectation of receiving wage income, we have held that, even for claims arising prior to the 1986 amendments, a claimant who voluntarily retired prior to the injury or aggravation at issue is not entitled to wage replacement benefits. *Weyerhaeuser Co. v. Farr*, 70 Wn. App. 759, 764-67, 855 P.2d 711 (1993); *Kaiser Aluminum & Chem. Corp. v. Overdorff*, 57 Wn. App. 291, 294-96, 788 P.2d 8 (1990). Prior to the adoption of the regulation defining voluntary retirement, we had similarly held that a person who, "despite having the physical capacity to engage in gainful employment," comes forward with "no evidence to indicate he intended or tried to work following his retirement" has voluntarily retired as a matter of law and become ineligible for wage replacement benefits. *Farr*, 70 Wn. App. at 765-66 (emphasis omitted). Thus, the application of the 1986 enactments does not affect the analysis.

B.    Robert Voluntarily Retired, Making Him Ineligible for the Requested Benefits

A finding that a claimant is permanently partially disabled necessarily establishes that the person can engage in some form of gainful employment: otherwise, the claimant would be permanently totally disabled. *Farr*, 70 Wn. App. at 766. Because the superior court affirmed the

November 8, 1990 decision and order finding Robert permanently partially disabled, and Robert did not appeal that decision, it is now res judicata that Robert had the ability to perform gainful employment as of November 1990. *Hartje*, 148 Wn. App. at 469; *Farr*, 70 Wn. App. at 766. Thus, Robert had "the physical capacity to engage in gainful employment," *Farr*, 70 Wn. App. at 765-66, but was "not receiving income, salary or wages from any gainful employment" and admitted that he made no "bonafide attempt to return to work" thereafter. WAC 296-14-100; Board Record (BR) (Nov. 5, 2010) (Robert Giger) at 59. Thus, under the authority discussed above, Robert's status from November 8, 1990 forward was one of voluntary retirement.

Carolyn disputes whether this status was properly determined on summary judgment, noting that WAC 296-14-100(2)[2] specifies that "[a] worker is not voluntarily retired when the industrial injury or occupational disease is a proximate cause for the retirement." Br. of Appellant at 12. From this, Carolyn argues that, because Robert presented evidence that the 1985 accident led to his retirement in 1988, whether he qualified as voluntarily retired presented a genuine factual issue. The analyses in *Farr* and *Hartje*, however, foreclose this argument.

The facts in *Farr* closely resemble those presented here: In 1979, Farr filed to reopen a worker's compensation claim arising from a prior work related injury, and he retired the next year. *Farr*, 70 Wn. App. at 761. The Department allowed Farr's claim, closing it with a permanent partial disability award. *Farr*, 70 Wn. App. at 761. Five years after retiring, Farr again filed to reopen the claim after the injury became aggravated, and the Board ultimately found him permanently totally disabled and ordered the Department to award Farr a pension. *Farr*, 70 Wn. App. at 761. The employer, Weyerhaeuser, appealed to the superior court and

---

[2] Although Carolyn cites in her brief to section (3) of WAC 296-14-100, the correct section is (2).

moved for summary judgment, making essentially the same argument the Department makes here, which motion that court granted. *Farr*, 70 Wn. App. at 762.

On appeal to our court, Farr argued that he did not voluntarily retire because the "injury played a significant part in his decision to leave" Weyerhaueser. *Farr*, 70 Wn. App. at 765. We rejected that argument and affirmed the grant of summary judgment, pointing out that "[t]he fact that his partial injury may have played an indirect role in his decision to retire *from Weyerhaeuser* is irrelevant to the legal question at issue: whether Farr's retirement constituted voluntary withdrawal from the general work force." *Farr*, 70 Wn. App. at 766. We concluded that, because the Board made its finding that the aggravation of Farr's injury rendered him totally disabled sometime after he stopped working, and after the Department had found Farr only partially disabled, Farr, having presented no evidence that he had sought to reenter the workforce, was as a matter of law not entitled to total permanent disability benefits. *Farr*, 70 Wn. App. at 766-67.

Similarly, Hartje filed a workers' compensation claim after sustaining a work related injury in 1994, and the Department closed her claim with a partial permanent disability award. *Hartje*, 148 Wn. App. at 459. Hartje's employer, Energy Northwest, fired her in July 1997 after she failed to return to work, allegedly due to the injury. *Hartje*, 148 Wn. App. at 460-61. In 1999, Hartje filed to reopen her claim based on an aggravation of the injury. *Hartje*, 148 Wn. App. at 460. The Department reopened the claim, and the Board ultimately awarded Hartje temporary total disability benefits from Feb. 1, 1999 to Oct 6, 2004, even though she admitted she had not sought employment since leaving Energy Northwest. *Hartje*, 148 Wn. App. at 461-62.

Energy Northwest appealed, and we reversed. *Hartje*, 148 Wn. App. at 470. Hartje argued that she had not voluntarily retired "because she was not able to return to the work force due to her industrial injury." *Hartje*, 148 Wn. App. at 468. Following *Farr*, we rejected that argument, holding that because the Department had determined that Ms. Hartje was "capable of obtaining gainful employment as of October 2, 1996," after Energy Northwest had fired her, and Hartje admitted that she did not seek further employment, her injury was not, as a matter of law, "a proximate cause for her failure to return to the work force." *Hartje*, 148 Wn. App. at 469. "Hartje's intent to return to the work force after her voluntary departure . . . does not constitute a bona fide attempt," and thus "the Board erred as a matter of law in awarding her additional time loss compensation." *Hartje*, 148 Wn. App. at 468-69.

Therefore, the question is not whether Robert's injury proximately caused him to retire from the Larch Corrections Center in 1988: the question is whether the injury proximately caused him to subsequently withdraw entirely from the workforce. Because the 1990 order finding that Robert was partially disabled establishes that, subsequent to his retirement from the Larch Corrections Center, Robert had the ability to engage in some gainful employment, and he admitted that he did not thereafter seek to reenter the work force, he voluntarily retired as a matter of law under the precedents discussed above. He was thus ineligible for wage replacement benefits, and the superior court did not err in granting summary judgment to the Department.

Carolyn attempts to distinguish *Farr* on the ground that it was decided under the law prior to the statutory amendments discussed above. As discussed, the statutory changes in no way affect the analysis: *Farr* interpreted the pre-amendment statute to bar award of wage

9

replacement benefits to voluntarily retired workers, and *Hartje* interpreted the statute as amended to do the same.

Carolyn seeks to distinguish *Hartje* on the ground that, until September 4, 1992, Robert was attempting to appeal the Department's order finding him only partially disabled, and then suffered aggravating injuries in car accidents on November 12, 1992 and February 9, 1993. Citing *Hartje*, 148 Wn. App. at 469, Carolyn argues that if Robert reasonably refrained from seeking employment prior to the 1994 aggravation, he remained eligible for the requested benefits.[3] The cited authority does not support Carolyn's argument. To the contrary, *Hartje*'s appeal of the Department's order finding her partially permanently disabled was pending at the time she filed to reopen her claim based on the aggravation of her injury. *Hartje*, 148 Wn. App. at 459-60. Further, the central criteria under *Farr*, 70 Wn. App. at 765-66, in determining whether one is voluntarily retired is whether one has the physical capacity to engage in gainful employment, yet failed to attempt to find work. To relieve Robert of this requirement in this proceeding because it might be inconvenient in another proceeding does not serve the determination of truth in either.

Carolyn also seeks to distinguish *Hartje* on the ground that the aggravation here resulted in part from treatment provided Robert for the 1985 injury. In doing so, Carolyn relies on the consequential condition doctrine, which allows an injured worker to recover for harms proximately caused by the work related injury, even where the harm also has other proximate causes, including the worker's subsequent negligence. Reply Br. of Appellant at 5 (citing *Dep't of Labor & Indus. v. Shirley*, 171 Wn. App. 870, 886, 288 P.3d 390 (2012), *review denied*, 177

---

[3] Robert contended that his failure to seek employment was reasonable while his appeal was pending because doing so would have jeopardized his claim to temporary total disability benefits, and that he was subsequently prevented from seeking further employment by the aggravations of his injury resulting from the car accidents.

Wn.2d 1006 (2013)). The authority cited is inapposite. That the consequential condition doctrine entitled Robert to compensation for harms proximately caused by his injury, even if those harms also had other proximate causes, does not establish his entitlement to the requested benefits. *Shirley* involved survivor's death benefits, 171 Wn. App. at 880, which courts do not consider wage replacement benefits. *Mason*, 166 Wn. App. at 867. Thus, whether Shirley had voluntarily retired at the time of his death had no bearing on his spouse's entitlement to survivor's benefits. *See Mason*, 166 Wn. App. at 866-67 (holding that survivor's death benefits do not have the same purpose as wage replacement benefits and are thus not subject to the voluntary retirement limitation).

The question presented here is not whether Robert was entitled to nonwage replacement benefits, such as costs of medical treatment for harm proximately caused by his injury. Instead, the issue is whether Robert may receive benefits intended to "replace" wages that he did not earn because he voluntarily chose not to seek further employment. *Farr, Overdorff,* and *Hartje* clearly answer this question in the negative: Robert may not receive wage replacement benefits based on an aggravation that occurred after he voluntarily retired.

## II. ATTORNEY FEES

Carolyn points out that if she were to prevail on this appeal, she would be entitled to attorney fees under RCW 51.52,130. However, she has not prevailed and accordingly is not entitled to fees under this provision.

No. 44508-5-II

## CONCLUSION

The superior court did not err in granting summary judgment to the Department. Robert voluntarily retired as a matter of law prior to the aggravation of his injury and was thus not entitled to wage replacement benefits. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
BJORGEN, A.C.J.

We concur:

_____
MAXA, J.

_____
LEE, J.

12